THE STATE v. CUNNINGHAM, Appellant.

Division Two, February 6, 1900.

1. **Incomplete Contract:** VERBAL EVIDENCE.  Where a purported contract is incomplete within itself, is in fact nothing more than a memorandum, is not such as the statute of frauds requires to be in writing and has been performed by one of the parties, verbal testimony is admissible to explain the omitted parts.

2. **Evidence:** NO EXCEPTIONS.  Questions as to the incompetency of testimony regarding the contents of books and papers, can not be raised for the first time on appeal.  They will be disregarded unless proper objection and exception were made at the trial.

3. ———: CROSS EXAMINATION OF DEFENDANT: FLIGHT.  In defendant's direct examination he stated that a certain letter "was received in Springfield after I left the city."  *Held*, that it was clearly within the limits of legitimate cross examination to ask him how long it was after he left the city until he got back.

4. ———: EMBEZZLEMENT: BROKER: COMMINGLING FUNDS WITH HIS OWN. Where the defendant is a broker, and as such received money from another with which to buy wheat in another city, it is no defense to a charge of embezzlement that he commingled it with his own. It is a special bargain whereby he is 'without authority to mix with his own.

5. **Embezzlement:** GAMBLING CONTRACT. The defendant received $250 to be used in the buying of 5,000 bushels of wheat to be thereafter delivered "if the buyer did not thereafter sell it." The defendant transmitted $10 to a commission company, for which he 'was a correspondent and appropriated the balance. *Held,* that he was guilty of embezzlement, although within the meaning of the statute (sec. 3931, R. S. 1899), the contract was a gambling contract.

6. ———: NO INSTRUCTION AS TO AGE. Where the evidence shows that defendant was forty-five years old, and there is no pretense to the contrary, it was not reversible error to omit from a State's instructions the issue that the defendant (who was being tried for embezzlement) was under sixteen years of age. He could not have been prejudiced by such omission, although the instruction would have been less objectionable had this issue not. been omitted.

7. ———: INTENT. It is necessary that an instruction tell the jury that, in order to convict the defendant of embezzlement, they must believe from the evidence that he converted the money or thing to his own use without the assent of his principal, with a felonious and fraudulent intent to deprive him thereof. And a failure to so instruct is reversible error. The use of the words "unlawfully convert to his own use without the assent," etc., does not supply the word felonious or the words fraudulent, etc.

8. ———: ———: INFERRED. No one can be convicted of a felony in the absence of an intent to do a criminal act, but such intent in a case of embezzlement may be inferred from a felonious or fraudulent conversion. Thus, where a defendant, after receiving money with specific directions as to its application, disobeyed his instructions, abandoned his place of business, kept the money and left the country, the fraudulent intent to convert the money may be inferred from these circumstances.

Appeal from Greene Criminal Court.—*Hon. L. B. McAfee,*
Judge.

REVERSED AND REMANDED.

*Henry C. Young* for appellant.

(1)   Verbal evidence concerning the provisions of a contract, admitted to be in writing, is inadmissible.   Price v. Hunt, 59 Mo. 258; Kuhn v. Schwartz, 33 Mo. App. 614; Morgan v. Porter, 103 Mo. 140.; Loan & Trust Co. v. Wackman, 71 Mo. App. 277; Williams v. Stifel, 64 Mo. App. 138. (2)   The State should not have been permitted to elicit from witness, Minor, his conclusion as to whether or not the defendant was the agent of the Donovan Commission Company. Barrett v. Railroad, 9 Mo. App. 226; Harrison v. Railroad, 50 Mo. App. 332; State v. Gritzner, 134 Mo. 525; Railroad v. St. L. U. St. Yds., 120 Mo. 550; Benjamin v. Street Ry., 133 Mo. 288.   (3)   Minor's testimony as to matters upon which his information was derived solely from the books of the Donovan Commission Company, should not have been received.   Wolff v. Matthews, 39 Mo. App. 378; Anderson v. Valmer, 83 Mo. 407.   This is especially true in view of the fact that the books, from which witness refreshed his memory, were not the books of original entry.   Hill v. Johnson, 38 Mo. App. 394; Traber v. Hicks, 131 Mo. 186.   (4)   Prigmore's testimony as to transactions between himself and the Donovan Commission Company and other parties, in defendant's absence, should not have been received.   State v. Winton, 116 Mo. 605.   (5)   The prosecuting attorney should not have been permitted to interrogate the defendant upon matters not referred to on direct examination.   State v. Avery, 113 Mo. 498.   (6)   Defendant should have been permitted to show a commingling of funds.   Com. v. Libley, 52 Mass. 64; 10 Am. and Eng. Ency. of Law (2 Ed.), 985; State v. Kent, 22 Minn. 41; 2 Bish. Crim. Law, p. 370. (7) The manner and course of dealing between the Donovan Commission Company and defendant was pertinent as bearing upon the relationship of the parties and the actual character of the transaction.   McGrew v. City Produce Exchange, 4 S. W. Rep.

(Tenn.) 138; Dunn v. Bell, 4 S. W. Rep. (Tenn.) 41.    (8) Defendant should have been permitted to show that a commission house stands responsible to a broker for the full amount of wheat purchased by him. (a) He should also have been permitted on cross-examination of Minor to show the manner in which accounts between the broker and commission man were settled and that defendant had a running account with the Donovan Commission Company.    (b) Defendant should have been permitted on cross-examination of Minor to show that it was only necessary for defendant to keep on deposit with the commission company a sufficient amount of money to keep the deal in question alive.    (9)    Defendant's evidence as to his intent was admissible upon the issue of intentional conversion.    State v. Palmer, 88 Mo. 573.    (10) So also was his evidence as to his intent in leaving town upon the issue of whether or not he fled from justice. State v. Mallon, 75 Mo. 355.    (11)    The transaction was a simon pure gambling contract under which no agency could exist and upon which no liability on the part of defendant, either of a civil or criminal character could be predicated.    Jameson v. Wallace, 59 Am. St. Rep. 302; Pearce v. Foote, 113 Ill. 238; Cannon v. Black, 119 Mo. 126; State v. Gritzman, 134 Mo. 512; State v. Williamson, 118 Mo. 146; Negley v. Devlin, 12 Abb. Prac. N. S. 210; Buck v. Albee, 26 Vt. 184; Lemon v. Grosskopf, 22 Wis. 447; Society v. Lester, 63 N. W. Rep. 977; Seamans v. Temple, 63 N. W. Rep. 408; Seamans v. Oliver, 22 N. E. Rep. 503; Roselle v. Beckemeir, 134 Mo. 380; Roselle v. Farmers Bank, 141 Mo. 36. (12) The court erred in instructing the jury as requested by the State. (a) The general instruction number 1 given for the State, is erroneous, in that it fails to submit to the jury the issue as to whether the defendant was over the age of sixteen years. (b) It is also erroneous in that it fails to submit the question of a felonious intent to deprive the defendant of his property or to convert it to defendant's own use.    State v. Pratt, 98 Mo.

.102; State v. Jennings, 98 Mo. 493; State v. Adams, 108 Mo. 208; State v. Thompson, 144 Mo. 314.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Where there is but a memorandum of a contract, and it does not purport to be a complete expression of the entire contract, or where a part only of a contract is reduced to writing, the matter omitted may be supplied by parol evidence. Life Ass'n v. Cravens, 60 Mo. 389; State ex rel. v. Hoshow, 98 Mo. 358; Beck. v. Beck, 43 Mo. 266; O'Neil v. Crain, 67 Mo. 250; Rollins v. Claybrook, 22 Mo. 407; Moss v. Green, 41 Mo. 467; Lash v. Parlin, 78 Mo. 392. (2) The demurrer to the evidence was properly overruled. The evidence shows every essential element to constitute embezzlement. To constitute embezzlement under the indictment in this case and the statute upon which it was bottomed the case is made out upon proving the following five provisions: First.—That the defendant was the agent of McLemore. Second.—That the defendant was over sixteen years of age. Third.—That he received the money belonging to his principal, McLemore, on account of said McLemore. Fourth.— That he received it by virtue of his employment. Fifth.— That he converted it to his own use with the intent to deprive the owner of it without the consent of his principal, Mc-Lemore. All of the above constituent elements are conclusively shown by the evidence introduced on the part of the State and as the weight of testimony was a question solely for the jury it became the plain duty of the court to overrule the demurrer. (3) The fact that the money is illegally received, or received under an illegal employment, will not render the embezzlement thereof any the less punishable. Com. v. Cooper, 130 Mass. 285; State v. Tumey, 81 Ind. 559; State v. Shadd, 80 Mo. 362; McClain's

Crim. Law, sec. 635.    (4)    It is also contended that instruc-. tion No. 1 is erroneous in that it fails to submit the question of a felonious intent to deprive McLemore of his property or to convert it to defendant's own use.    The cases cited by appellant on this proposition are not in point for the reason that the questions involved in them were to the effect that the instruction should require the jury to find that the defendant appropriated the money to his own use with the fraudulent intent, or for the reason of permanently depriving the owner of the use thereof.    In those cases it was held to be unnecessary to charge the jury that the conversion should be done fraudulently or with a fraudulent intent.    From the statute it will be noticed that the only intent required is that the defendant shall intend to convert the property to his own use without the assent of his principal.    This is properly shown by the use of the word "unlawfully" in the instruction, it being unnecessary to employ the word "fraudulent."    State v. Adams, 108 Mo. 214.

BURGESS, J.—Defendant was convicted in the criminal court of Greene county for embezzling two hundred and fifty dollars, the money of one R. F. McLemore, of whom he was alleged to have been the agent at the time of the embezzlement, and his punishment fixed at two years imprisonment in the penitentiary.    He appeals.

At the time of the commission of the alleged offense and for sometime prior thereto the defendant was, by occupation, a telegraph operator and lived at Springfield, Missouri. About the middle of November, 1898, he became the correspondent of the Donovan Commission Company, a firm engaged in the commission business in the city of St. Louis. His business was that of receiving margins or advance payments on wheat, corn and other farm products for future delivery, and placing them with said commission company.

On the 18th day of January, 1899, R. F. McLemore,

State v. Cunningham.

who lived some distance from Springfield, went to defendant's place of business in that city and directed him to buy for him (McLemore) five thousand bushels of wheat from Donovan Commission Company, St. Louis, Missouri, and gave him as his agent $250 to send them as a margin to protect the trade, the wheat to be delivered to McLemore, at his option at any time before the 31st day of May, 1899, and at the same time defendant signed and handed to him the following memorandum.

"DEPOSITS MUST ACCOMPANY ALL ORDERS.

"We solicit and will receive no business except with the understanding that the actual delivery of property bought and sold upon orders is, in all cases, contemplated and understood, and we reserve the right to close all transactions without further notice when deposits are about exhausted.

"MEMO.

"No. 68.                              Springfield, Mo., 1-18, 1899.

"Bought through Donovan Commission Co., of St. Louis. For account of R. F. McLemore.

5 May Wht. Chicago.

at 70 3-8                              Stop loss option.

Deposits.                              Com. 8.

E. & O. E.                             C. B. Cunningham,
                                                    "Broker."

The defendant agreed with him to make the order and transmit the money to said commission company. Instead of this defendant wired an order to the commission company for one thousand bushels of May wheat and remitted to the company the sum of ten dollars. That same evening defendant left Springfield, and went to Memphis, Tenn., and circumstances in evidence tended to show, took with him the balance of the money, to-wit, two hundred and forty dollars. From Memphis he went to St. Louis where he was arrested

about three weeks thereafter, and returned·to Springfield.

The defense is that defendant was not the agent of Mc-Lemore, but that McLemore purchased five thousand bushels of May wheat from him direct, and relied solely upon his honesty and good faith for the delivery of the wheat.

On the part of the State the court, over the objection of defendant, instructed the jury as follows:

"1.    Your are hereby instructed that if you believe from the evidence that the defendant did on or about the 18th day of January, 1899, take or receive into his possession two hundred and fifty dollars, or any portion thereof exceeding thirty dollars, from R. F. McLemore, and that he did receive and take the same into his possession as the agent of the said R. F. McLemore and by virtue of his employment as such agent, and that he did on or about the 18th day of January, 1899, at the county of Greene and state of Missouri unlawfully convert said money or any portion thereof exceeding thirty dollars to his own use without the assent of the said R. F. McLemore, you will find the defendant guilty of embezzlement as charged in the indictment and assess his punishment at imprisonment in the penitentiary for a term of not less than two years nor more than five years.

"2.    You are instructed that if R. F. McLemore delivered to the defendant two hundred and fifty dollars and instructed defendant to send said money to the Donovan Commission Company, of St. Louis, Mo., for the purpose of buying for said McLemore five thousand bushels of wheat at a certain price per bushel to be delivered at a future time, then the defendant was the agent of said R. F. McLemore.

"3.    You are instructed that the flight of defendant, a short time after he received said money from said McLemore, raises a presumption of guilt against him, and you may take that fact into consideration together with the other evidence in the case; provided you believe from the evidence he did flee from justice.

"4.   You are instructed that to buy grain for future delivery is a valid and legal transaction under the law, and although you may find from the evidence that the two hundred and fifty dollars received by the defendant from said McLemore was to be used by the defendant to buy through the said Donovan Co. for the said McLemore five thousand bushels of wheat to be delivered in the month of May following, you will find the defendant guilty as charged if you further believe from the evidence that the defendant after receiving said money on or about the 18th of January, 1899, as the agent of said McLemore, unlawfully converted the same to his own use without the assent of the said McLemore.

"5.   You are instructed that it is no defense in this case that the Donovan Commission Company owed the defendant anything on account of any other deal other than the particular deal for the five thousand bushels of wheat for R. F. McLemore, unless the defendant instructed said commission company to apply said credit to the buying of the said five thousand bushels of wheat for the said McLemore, and you are further instructed that it is no defense that R. F. McLemore did not demand, at any time from the defendant, the two hundred and fifty dollars deposited with the defendant by said McLemore.

"6.   The court instructs the jury that they are the sole judges of the weight of the evidence and the credibility of the witness.   And in determining the credit to be given any witness they should take into consideration his demeanor on the witness stand, his bias, prejudice or interest as shown by the evidence, the probability or improbability of such witness's testimony, and all other facts and circumstances shown in evidence which may affect the credit due the testimony of such witness.

"7. The court instructs the jury that the defendant is a competent witness in this case in his own behalf, but in determining the credit you will attach to his testimony, you

may take into consideration the fact that he is the accused person on trial and interested in the result thereof."

At the request of defendant the court gave the following instructions:

"3. You are instructed that if you believe from the evidence that, in the transaction had between defendant and the prosecuting witness, McLemore, the defendant acted for himself or as the agent for the Donovan Commission Company and not for said McLemore, then you will acquit the defendant.

"4. The court instructs the jury that the indictment in this case is a mere charge and should be taken and considered as no evidence whatever of defendant's guilt. That the law presumes the defendant innocent until he is shown to be guilty beyond a reasonable doubt. That the presumption of innocence abides with defendant throughout the trial until overthrown by evidence so clear and cogent as to convince you beyond a reasonable doubt of his guilt.

"5. By reasonable doubt is meant a substantial doubt—one arising out of the evidence or lack of evidence in the case and not a mere possibility of defendant's innocence unsupported by any deficiency in the State's proof or positive testimony on behalf of defendant. It is necessary in determining that defendant is beyond a reasonable doubt guilty of the offense charged against him, that you should believe in his guilt with that degree of unquestioning and confident faith that would cause you to act in the most important affairs of life."

The following instructions asked by defendant were refused, to which he duly excepted:

"1. The court instructs the jury that if the contract under which the money alleged to have been embezzled was received by defendant was a gambling contract, then the same was void and defendant was not required to return the money

received from the prosecuting witness, or account to him for the same, and you must acquit the defendant.

"2.   You are instructed that in determining whether the contract between the prosecuting witness McLemore and defendant was a valid one, you are to consider whether an actual delivery of the wheat contracted for, at the time specified for its delivery, was intended or not, and if you find from the evidence that either party at the time of entering into said contract, did not contemplate an actual delivery of said wheat at the time called for by the contract, or if the parties or either of them merely intended to settle and adjust the difference between the market value and the contract price on the day of delivery, then said transaction is a gambling transaction and void and you will acquit the defendant.

"6.   If you find and believe from the evidence that the prosecuting witness McLemore in the transaction had with the defendant, contracted for the purchase and delivery of five thousand bushels of May wheat, and that he relied in said transaction upon defendant's honesty and good faith, and so relying gave him the sum of two hundred and fifty dollars and expected therefor from the defendant the delivery of the wheat or its equivalent, then you must acquit the defendant.

"7.   The court instructs the jury that if the defendant was a broker and known to the prosecuting witness to be such and engaged in the handling of other funds besides those of said McLemore, and if you should further find and believe from the evidence that the defendant intermingled the moneys received from said McLemore with that of other customers, then you must acquit the defendant."   ·

The court of its own motion, over the objection of defendant, gave the following instruction:

"2.   You are instructed that in determining whether the contract between the prosecuting witness McLemore and defendant was a valid one, you are to consider whether an

actual delivery of the wheat contracted for, at the time specified for its delivery, was intended or not, and if you find from the evidence that the parties, at the time of entering into said contract, did not contemplate an actual delivery of said wheat at the time called for by the contract, or if the parties merely intended to settle and adjust the difference between the market value and the contract price on the day of delivery, then said transaction is a gambling transaction and void, and you will acquit the defendant."

The first question arises on the admission of verbal evidence with respect to the contract or argeement between R. F. McLemore, and defendant at the time McLemore left the money with him. It is claimed by defendant that the contract was in writing, and that being the case, verbal testimony was inadmissible for the purpose of varying, adding to, or changing it, in the absence of fraud or mistake.

There is no principle of law better settled than that verbal testimony is inadmissible for the purpose of altering or changing a written contract in the absence of fraud or mistake, but what is called the contract in this case is a card which purports to be, and is in fact, nothing more than a memorandum. It is so denominated on its face, the word memorandum being abbreviated by the letters "memo," immediately before its date. It is incomplete within itself as a contract, which was not within the statute of frauds, besides it had been performed on the part of defendant, and under such circumstances verbal testimony was admissible for the purpose of supplying the omitted parts. [Bunce v. Beck, 43 Mo. 266; Life Association. v. Cravens, 60 Mo. 388; Lash v. Parlin, 78 Mo. 391; State ex rel. v. Hoshaw, 98 Mo. 358; Chapin v. Dobson, 78 N. Y. 74.]

It is only such contracts as the statute of frauds requires to be in writing, that parol evidence is not competent to supply defects in. [Ringer v. Holtzclaw, 112 Mo. 519; Boyd v. Paul, 125 Mo. 9.]

It is claimed that the state should not have been permitted to elicit from the witness Minor, his conclusion as to whether or not the defendant was the agent of the Donovan Commission Company. In the main the facts testified to by this witness were properly admitted. He was secretary of the commission company and knew that defendant was their correspondent, and was not their agent, and we know of no more satisfactory or proper way of proving a negative than that adopted by the witness, when he testified that defendant "was not their agent." What the witness supposed with respect to matters testified to by him was of course inadmissible, but what he said he supposed, seems to have been of a harmless character merely collateral to the main issue, and it is impossible that it could have prejudiced defendant's case. Most of the statements which are complained of were gratuitous on the part of the witness, that is, not responsive to the questions propounded to him, but his answers were not hurtful to defendant's case because his own testimony shows that he acted for himself, and was in no sense the agent of Donovan Commission Company.

He testified that he acted for himself and was alone responsible to McLemore for the five thousand bushels of wheat which he had until the 31st of May to deliver.

So with respect to the contention that the testimony of the witness as to matters upon which it is claimed his information was derived solely from the books of the commission company, and therefore should not have been received, the testimony was not prejudicial to defendant's case, because it tended to show nothing more than that which defendant himself admitted, that is, that he was not the agent of the Donovan Commission Company.

It is also claimed that error was committed in permitting one Prigmore to testify as to the transactions between himself and the Donovan Commission Company and others, in defendant's absence. Embraced within this contention is evi-

dence sought to be elicited from the witness of the contents of a telegram received by him from the Donovan Commission Company on the 18th of January, 1898, with respect to the condition of the business which defendant left, and the contents of defendant's books and papers. It is a sufficient answer to the first proposition to say that the record shows that upon objection being made by defendant's counsel to the question propounded to the witness, he did not answer, and the question was waived—while as to the evidence with respect to the contents of the book and papers no objection was made to it. These questions being matter of exception, can not be raised on this appeal for the first time.

An exception was taken to the action of the court in permitting the State to ask defendant, who testified as a witness in his own behalf, on cross-examination, how long it was from the time he left Springfield until he got back, the ground of the objection being that the question referred to matters not touched upon in his direct examination. In his examination in chief defendant had testified that a certain letter dated St. Louis, January 18, 1899, "was received in Springfield after I left the city," and it was clearly within the limits of legitimate cross-examination to ask him when he left there.

By section 4218, Revised Statutes 1889, it is provided that any person on trial in a criminal cause may be a witness in his own behalf, and may be cross-examined as to any matters referred to in his examination in chief, and the question complained of was, it seems to us, with direct reference to a matter permitted by this statute, that is, to a matter referred to in his examination in chief.

Another contention is that defendant had the right to show a commingling of the moneys received by him from McLemore, with those of his own, and those received by him from other persons, but this even if true was no defense, because defendant had no interest whatever in the money, and received it as the agent of McLemore, with express directions to buy

for him five thousand bushels of May wheat and to send in the $250 as a margin to protect the purchase, which he failed to do, with the exception of the purchase of one thousand bushels and the remittance of ten dollars, but appropriated the money to his own use.    But even if defendant was, as he claims to have been at the time he received the money from Mc-Lemore, a broker, "there is a special bargain whereby he is without authority to mix the money with his own, it may be the subject of embezzlement by him." [2 Bishop's New Crim. Law, sec. 370.]    There was no error in excluding this evidence.

Defendant denied the embezzlement of the money, hence, what his intention was in appropriating it to his own use was immaterial, and no error was committed in refusing to permit him to state what his intention was.

It is argued by defendant that the course of dealing between the defendant and the Donovan Commission Company was pertinent, as tending to show their relations and the character of the transaction between them, but this the defendant was permitted to do, and has no reason to complain of the ruling of the court on that score.

Nor is it material that the commission company may have stood responsible to defendant for the full amount of wheat purchased by him.    His responsibility was to Mc-Lemore, from whom he admitted that he received two hundred and fifty dollars with which to buy five thousand bushels of May wheat, and that he only sent a small part of it.    Mc-Lemore was no party to any arrangement between defendant and the commission company, which is not only shown by the evidence, but defendant himself claims to be personally responsible to McLemore, and that in the deal he sold to him on his own account said wheat.

There is therefore no merit in this contention.

The same may be said with respect to other points raised upon the exclusion of evidence; they are untenable, and none

more so than that the court erred in the exclusion of evidence offered by defendant tending to show that the statements of the transactions had between the defendant and the Donovan Commission Company, had upon them revenue stamps, as such evidence had no tendency whatever to show the innocence of the defendant.

At the close of the evidence on the part of the State, defendant interposed a demurrer thereto, because insufficient to authorize a conviction, but the demurrer was overruled, and rightly so, because there was ample evidence to take the case to the jury. Its weight was for their consideration and not ours.

Defendant next insists that the contract was a gambling contract. By section 3931, Revised Statutes 1889, the sale of any of the properties mentioned therein, which includes grain, either on margin or otherwise, without any intention on the part of the party receiving and paying for the property so bought, or when the party buying any such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased, is declared to be gambling and unlawful, and is thereby prohibited.

There is no question from the evidence in this case but that the contract in question comes within the inhibition of the statute, and is a gambling contract, notwithstanding the effort upon the part of some of the witnesses to make it out otherwise. While the jury in effect found otherwise, when we consider that five thousand bushels of wheat were to be bought for two hundred and fifty dollars, to be thereafter delivered "if the buyer did not sell it," it seems impossible to convince the unbiased mind that the transaction was anything other than speculating in margins, which is prohibited by the statute, and such contracts therefore void. [Connor v. Black, 119 Mo. 126, and authorities cited.]

But is defendant for that reason any the less guilty, and to go unpunished for embezzling McLemore's money?

State v. Cunningham.

The general rule is, that although money be placed in the hands of an agent for an unlawful purpose, if he intentionally misapply it, or convert it to his own use, he is guilty of embezzlement.   [10 Am. and Eng. Ency. of Law (2 Ed.) 986.] Thus in State v. Shadd, 80 Mo. 358, the defendant auctioned off "pools" upon a horse race about to be run, and received the money of the purchaser, to whom he gave a receipt therefor, and it was held that he was the agent of the purchaser, and if he converted the money to his own use with intent to deprive its owner of it, he was guilty of embezzlement, although the money was placed in his hands for an immoral purpose.

Commonwealth v. Cooper, 130 Mass. 285, was a prosecution for the embezzlement of $200, received by the defendant therein upon a check sent to him by one Wood, with directions to invest the same on margin in railway shares. One of the defenses was that the contract was a gambling contract.   The court said:   "The defendant further contended that his contract with Wood was a 'gambling contract, and was illegal under the statute; and that, even if he had appropriated the margin, he could not be convicted of embezzlement.'   There was no evidence that Wood contemplated, or authorized the defendant to enter into, any gambling or illegal contract.   If he had, the check or money sent by him would remain the subject of larceny or embezzlement; and if the defendant fraudulently appropriated it to his own use, it would be no defense to an indictment by the government for embezzlement to show that the property had been intrusted to him for an illegal purpose."   The same rule is announced in State v. Tumey, 81 Ind. 559; McClain's Crim. Law, sec. 635; State v. O'Brien, 94 Tenn. 79; Woodward v. State, 103 Ind. 127; State v. Spaulding, 24 Kan. 1.

The State's instruction numbered one is criticised upon the ground that it fails to submit to the jury the issue as to

Vol. 154 mo—12

whether the defendant was over the age of sixteen years, and the question of felonious intent upon the part of defendant to deprive McLemore of his money or to convert it to his own use. The evidence showed that defendant at the time of the trial was about forty-five years of age. In fact there is no pretense that he was under sixteen years of age at the time of the commission of the offense, and while the statute under which he is indicted (sec. 3549, R. S. 1889), applies only to persons over that age, defendant was in no way prejudiced by the failure of the instruction to submit the question of his age to the jury, still it would be less objectionable if it did so. But the judgment should not be reversed upon that ground alone.

A much more serious question is with respect to the failure of the instruction to tell the jury that in order to convict the defendant they must believe from the evidence that he converted the money to his own use without the assent of Mc-Lemore with a felonious or fraudulent intent to deprive him thereof. The State, however, contends that the only intent ·required by the statute is that the defendant should have intended to convert the money to his own use without the assent of his principal, and that if he unlawfully did so he is guilty under the statute. There was no such crime as embezzlement at common law; it is purely a statutory offense, and as to such offense, it is said, "There must be an evil intent, though the statute is silent on the subject." [1 Bishop's Criminal Law (6 Ed.), sec. 345.] So in 10 Am. and Eng. Ency. of Law (2 Ed.), 996, it is said: "To constitute embezzlement, it is necessary that there shall be a criminal intent. Most of the statutes, by the use of various terms, expressly require this. Even when they do not, the necessity for such an intent is to be implied. There must be, as in larceny, a fraudulent intent to deprive the owner of his property and appropriate the same." [Eilers v. State, 34 Tex. Crim. Rep. 344.] The word unlawfully where used in the instruction does not supply the

word felonious, or the words fraudulently, etc., for while defendant may have unlawfully converted the money to his own use, it does not necessarily follow that he did so with a felonious or fraudulent intent, and unless he did so with such intent he is not guilty of embezzlement, although the statute does not in express terms require that there shall be a criminal intent. [State v. Reilly, 4 Mo. App. 392.] Many things are unlawfully done which are not crimes, because the criminal intent is wanting.

No one can be convicted of a felony in the absence of an intent to do a criminal act, but such intent in case of embezzlement may be inferred from a felonious or fraudulent conversion. [State v. Noland, 111 Mo. 473; Dotson v. State, 51 Ark. 119; People v. Wadsworth, 63 Mich. 500.] Thus in Rex v. Williams, 7 C. & P. 338, a servant was sent to receive rent due her employer, and after receiving it, instead of returning, she left the country. It was held that a fraudulent intent to convert the money might be inferred from these circumstances.

In the case at bar the defendant after receiving the money, with specific directions as to its application, disobeyed his instructions, abandoned his place of business, kept the money and left the country. The facts tending to show the felonious intent were substantially the same in both cases.

As pointing out the distinction between the statutory crime of embezzlement, and the common law crime of larceny, there is quoted with approval in the case of Spalding v. People, in 172 Ill. L. C. 55, from Bishop's New Criminal Law (vol. 2, secs. 372, 373, 379), the following: "The gist of common law larceny is the felonious 'taking' of what is another's, with the simultaneous intent in the taker of misappropriating it; but in the statutory embezzlement there is no felonious taking, for the thing comes to the servant by delivery, either from the master or a third person, so that the question now is, by what act,

after it is received, does the servant commit the embezzlement? The rule of law appears only indistinctly in the books. Still, we may infer from the authorities, and from the reasons inherent in the question, that if the servant intentionally does with the property under his control what one must intend to do with property taken to commit larceny of it, he embezzles it, while nothing less is sufficient; or, assuming the needful criminal intent to exist, he must and need only do what in our civil jurisprudence is termed 'conversion,' defined to be any dealing with the thing which, impliedly or by its terms, excludes the owner's dominion. To illustrate: if the servant instead of delivering the property to his master or another, as required by his duty, pledges it for his own debt, or runs away with it, or neglects or refuses to account for it, or otherwise wrongfully diverts its course towards its destination to make it his own, he embezzles it. The felonious or otherwise fraudulent intent is an essential element, yet if a man commits the act of embezzlement the presumption is that he means to embezzle."

Instructions numbered 2, 3, 4, 6 and 7, given on behalf of the state are also challenged, but the criticisms on them seem to be unwarranted. They are, in so far as we have been able to see, substantially correct.

Instruction numbered 2, given by the court of its own motion, should not have been given, for a reason already stated, that is, although the contract was a gambling contract, it did not justify defendant in embezzling the money.

Defendant also insists that the seventh instruction asked by him and refused should have been given, but as defendant had no right, as we have held, to commingle his own funds with those of McLemore's, it was properly refused.

A final contention is that the indictment is bad, but we are unable to agree to this position. It contains all allegations necessary under the statute, and is we think free from objection. It is in all material respects like the indictment

in State v. Adams, 108 Mo. 208, which was held good by this court.

There are a number of questions raised by counsel for defendant in his brief upon which we have not passed, for the reason that we think them untenable, and not of sufficient importance to justify a reversal of the judgment.

For the error in the state's first instruction as indicated we reverse the judgment, and remand the cause.

