### FRED S. WYATT v. STATE.

No. A-3168.   Opinion Filed March 22, 1922.
(205 Pac. 194.)

(Syllabus.)

1. **Embezzlement—Agent Acting Within His Authorization not Guilty of Embezzlement** If an agent, bailee, or servant does with the money or property of his principal only what he has been authorized to do, he is not guilty of embezzlement.

2. **Same—Agent Using Funds Fraudulently Acquired by Principal.** Money acquired fraudulently by the principal may be the subject of embezzlement by an agent; but an agent handling such a fund is not guilty of embezzlement from his principal where he uses the funds within the scope of his authority.

Appeal from District Court, Stephens County; Cham Jones, Judge.

Fred S. Wyatt was convicted of embezzlement, and sentenced to imprisonment for six months in the state penitentiary, and he appeals. Reversed and remanded.

James W. Steen and J. B. Wilkinson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and R. McMillan, Asst. Atty. Gen., for the State.

BESSEY, J. Fred S. Wyatt, plaintiff in error, in this opinion referred to as the defendant, was by information filed October 1, 1916, charged with the embezzlement of the sum of $25, the charging part of the information, which was predicated upon section 2671, R. L. 1910, being as follows:

"That the said Fred S. Wyatt, on the day and year aforesaid, at and within the county and state aforesaid, was then and there an officer, to wit, president of a certain association, to wit, the People's Buying & Selling Association, and that as such officer the said Fred S. Wyatt was intrusted with and had in his possession and under his control, by virtue of his trust as such officer, the sum of $25, good and lawful money of the United States of America; and that the said Fred S. Wyatt did then and there, while he was such officer and while he was intrusted with the said sum of money as aforesaid, by virtue of a trust then and there existing between him and the said association, willfully, unlawfully, wrongfully, fraudulently, and feloniously embezzle, convert and appropriate the said sum of money, to wit, $25, to his own use and to a use and purpose not in the due and lawful execution of his said trust and duty."

The evidence indicates that the People's Buying & Selling Association had been a corporation operating a kind of farmers' co-operative store in Garfield county, Okla., and that the store there had failed and ceased to operate about two years prior to the filing of this information, and that in the meantime the corporation's certificate to do business was revoked and suspended for failure to pay its corporation taxes; that this association was what is sometimes termed a close corporation, consisting of the defendant, his wife, his son, and an attorney at Enid, who was counsel for the corporation.

The defendant was the president and treasurer of the association, and his son was secretary. The object and purpose of the association was to organize and conduct farmers' co-

operative stores, to buy and sell merchandise and farm products. The association was financed, in part, by the selling of certificates to farmers and others, by which it was agreed that the holders of these certificates would have the privilege of buying merchandise from the association stores at 5 per cent. discount on staple merchandise, and at from 5 to 20 per cent. discount on other commodities, and the association agreed to handle and dispose of farm products for the owners of these certificates to the best advantage possible.

Wyatt spent some time in and about Marlow soliciting and selling certificates to farmers, for the purpose, as he represented, of establishing a store at Marlow. One of these certificates, indicative of the character of contract made with these farmers, is as follows:

"No. 12.                                    18 Years.

"Membership Certificate in the People's Buying and Selling Association, Incorporated under the Laws of Oklahoma. Authorized Capital, $20,000.

"This is to certify that George D. Morrison, having subscribed and paid for a membership in the People's Buying and Selling Association, is entitled to all its benefits and advantages from date of the certificate during the term of incorporation.

"This association agrees to handle a general line of merchandise, such as groceries, dry goods, clothing, farm machinery, siloes and accessories to same, giving to its members a trade discount on all purchases of five per cent. on groceries and from ten to twenty-five per cent. on other merchandise. Also to give all possible advantage to handling farm products.

"Members bind themselves not to avail themselves of the privilege of membership except for their own personal use and that of their immediate family. The purchaser having paid the membership fee is exempt from all dues, liabilities and assessments.

"In witness whereof, the said corporation has caused this certificate to be signed by the duly authorized officers and to be sealed with the seal of the corporation this 3d day of May, 1916.                                    Fred S. Wyatt, President."

"[Corporate Seal.]

"Earl L. Wyatt, Secretary."

The defendant made contracts of this character with 10 or 12 farmers in the vicinity of Marlow, taking notes in the sum of $100 therefor, with the exception of one sold to Walter Garvin, who paid cash for the certificate issued to him. The $100 so obtained was deposited by the defendant in the National Bank of Marlow, in the name of the People's Buying and Selling Association, and later the defendant, as president, treasurer, and general manager of the business, drew checks on this deposit, one of which was as follows:

"The National Bank of Marlow.

"Marlow, Oklahoma, May 3, 1916.

. "Pay to Fred S. Wyatt or order $25.00, twenty-five and no-100 dollars.

"The People's B. & S. Ass'n,

"By Fred S. Wyatt, Pres. & Treas."

Indorsed on back as follows:

"Fred S. Wyatt.   F. Alice Holt.   J. C. Nance."

At this time J. C. Nance, manager of the Marlow Review, was conducting an automobile contest, in which Alice Holt, a country school teacher, seemed to be in the lead, and appeared to be the probable winner of the automobile. The defendant drew this $25 check, and indorsed it to Alice Holt, in payment of his subscription to the Marlow Review for 25 years, for the purpose of aiding her to procure the automobile, with the understanding and agreement between them that the defendant Wyatt was to have the use of the car for the purpose

of getting about the country and soliciting the sale of other certificates, and generally to promote the business of the association and put it on an active paying basis. With reference to this transaction, a part of the testimony of Alice Holt is as follows:

Cross-examination:

"Q. What was the agreement between you and Mr. Wyatt at the time he made that subscription? A. Well, I asked him for his subscription to the Marlow Review and he gave me the subscription for his daughter, and he said, 'Maybe I will help you some more.' He said, 'I am going to make my home here,' and he said, 'I will be here for years, and will take the paper longer than that bye and bye.' He took the paper for 25 years, and the paper is coming to his address for that time. He says, 'I am paying a livery bill every week,' or something to that effect—maybe every day—'for a buggy and team to promote this business,' and we had it in the agreement that, if I won the car, and I felt I was going to, he was to have the car to drive out and help promote the business, and that suited me exactly, as I was interested in the business; I had taken stock; he told me he had talked to Zachary, and they were selling him the store, and my sister had planned to have a position with him, and we were very anxious to get the business under way. I felt like he was getting pay for the money he subscribed, he said he advertised in the paper and felt like it would be his home paper when he came there.

"Q. This $25 was given to you as a'subscription in consideration that you would aid in promoting the business and let him have the use of the car to drive out in the country to promote the business? A. Yes, sir; that was in the trade."

With reference to this transaction the defendant himself testified in part as follows:

"Q. You gave the check to yourself that went to Miss Holt. State to the jury the circumstances under which you gave the check and what it was given for? A. Well, at that

time there was an automobile contest going on at Marlow, and I met Miss Holt and found out she was in the contest, and she had subscribed for membership in the organization, and she was anxious to receive the automobile, and I brought up a conversation with her; I was hiring an automobile to drive me around, for which the company was paying the expenses; I thought it was reasonably sure she would win, and by myself putting in $25 as a subscription to the paper that was putting on the contest it would give her the automobile, and under those conditions I was to have the automobile for promoting the proposition, driving myself, or having it driven. That is what the check was given for.

"Q. That was your object in making that check or in delivering it to her? A. Yes, sir."

It is urged that the proof does not support the allegations of the information. As we interpret the testimony, as shown by this record, this co-operative enterprise was an ingenious scheme to bilk the farmers. The name of the association, "the People's Buying & Selling Association," to farmers had an alluring, seductive sound. This, coupled with extravagant claims and false promises made by a shrewd salesman in the person of the president, treasurer, and general manager of the association, was well calculated to cause subscribers to turn their money over to him to be invested and managed as he saw fit. The organization at this time was outlawed, its charter revoked and it was no longer a going concern, which facts were not disclosed to prospective subscribers. We strongly suspect that this defendant could have been successfully prosecuted for false pretense and fraud practiced on the public, and possibly other crimes, but we cannot see how the transaction here complained of constituted a cheat or embezzlement against the association—a violation of a trust between principal and agent. In all probability, while the primary object of this organization was to farm the farmers, there was no fraud or embezzlement practiced against the or-

ganization itself, or any of its members, the wife, the son, or the general counsel. On the contrary, this transaction was well calculated to fullfill and carry out their common design. It was a clever advertising scheme from which all would derive a benefit—all but the subscribing farmers, who were in no sense members of the organization and who had no rights or voice in the business, except to buy merchandise at a discount.

If an agent, bailee, or servant does with the money or property of his principal only what he has been authorized to do, and has no felonious intent, he is not guilty of embezzlement. 20 Corpus Juris, 431, with annotations and numerous cases there cited.

Money acquired fraudulently by the principal may be the subject of embezzlement by an agent, but an agent handling such a fund is not guilty of embezzlement from his principal where he uses the funds within the scope of his authority. The fraudulent acquisition of the property in the first instance may amount to a separate crime, essentially different from embezzlement, and neither can be interchangeably substituted for the other. People v. Ward, 134 Cal. 301, 66 Pac. 372; State v. Posey, 88 S. C. 313, 70 S. E. 612; State v. Cunningham, 154 Mo. 161, 55 S. W. 282.

Neither the articles of incorporation nor the by-laws of the association were introduced in evidence, but we think it is fair to assume that the president, treasurer, and general manager of an enterprise of this character had general and unlimited power to do any and all things calculated directly or indirectly to promote the interests of the association or to enhance the value of its property; and in this connection he would have authority to make obligations and contracts of any kind or description in furtherance of any of its objects or purposes.

Viewing this feature of the case as stated above, it will be unnecessary to notice any of the other assignments of error, and the cause is reversed and remanded for further proceedings not inconsistent with this decision.

DOYLE, P. J., and MATSON, J., concur.