# C. T. RICE v. STATE.

No. A-8797.   July 26, 1935.
(48 Pac. [2d] 349.)

Williams, Cowan & Benedum, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, hereinafter for convenience referred to as the defendant, was by information jointly charged with W. G. Bray, of the crime of embezzlement; was tried separately, convicted, and his punishment fixed at imprisonment in the state penitentiary for three years, and a fine of $737.18.

Lucy Mae Biggerstaff, the first witness called on behalf of the state, testified in substance:

"I am deputy court clerk and have been from June, 1930, until this date; Mr. Bray was court clerk of this county from January, 1930, maybe it was '31, up to August, 1933. Monies that are deposited when cases are filed, or during the progress of the case, comes into possession of the court clerk; these funds are deposited with the county treasurer; in disbursing the funds received by the court clerk, by virtue of his office, we have a voucher, and issue our voucher checks; the court clerk is authorized to disburse the funds received by him by his own check; when a deposit is made the clerk gives a receipt, and it is entered on the appeearance docket in the same case, and then on the cash book of the date it was received. Mr. Bray made the deposits, except the first one after he came in the office. I was then showing him, although Mr. Bray and I wrote vouchers on those funds, the signature on exhibits 1 to 11, inclusive, is the signature of W. G. Bray, and our vouchers made payable to C. T. Rice."

The witness then identified a list of cases showing the amount of deposits in the case that was withdrawn by W. G. Bray annd C. T. Rice. While the witness was being examined on the number of cases and the amount of the deposits drawn, the county attorney stated to the court that the state elects to stand on the item of $369.09, which amount is represented by voucher No. 5638, dated June 3, 1933, the voucher being Exhibit No. 3.

The witness further stated that the amount of money, $334.92, withdrawn by the defendant and W. G. Bray, as shown by state exhibit No. 3, voucher No. 5638, stated the amount from the cases, and numbers, which show the name of the attorneys representing the parties, and who was responsible for making the deposit when the cases were filed, or during the progress of the case, showing that fifty-four

separate and distinct items of rebate from that many cases. Further on the witness was examined with reference to certain number and cases, and gave the year and date the cases were closed.

J. B. Dudley, a witness for the state, stated:

"I am an attorney at law in Oklahoma City, and was attorney in case No. 4071, in the district court of McClain county, Okla.; C. T. Rice, to my knowledge, was not an attorney of any of the parties; I deposited the court costs, and did not authorize C. T. Rice or W. G. Bray, or any other person to collect the unexpended court costs in that case."

Witness also testified as to being the attorney in cases Nos. 4234, 4292, and 4294, and stated he did not authorize W. G. Bray or C. T. Rice to collect any of the unexpended cost in the cases named.

To set out in detail the testimony of each witness of the state who was an attorney, or interested in the cases, which show the unexpended costs or moneys in the cases had been withdrawn by W. G. Bray or C. T. Rice, would lengthen this opinion longer than it is deemed necessary for the purpose of arriving at a decision.

The defendant, testifying in his own behalf, in substance stated:

"I am one of the defendants in this case; I will be 51 years old this coming March; I live in Purcell, next door to the courthouse; I came to Purcell in 1907 from Missouri; I have been practicing law in McClain county since 1907; my family consists of a wife, and three daughters raised here in McClain county; I have known W. G. Bray six or seven years; I first got acquainted with him when he was teaching school in the country; later he was elected court clerk; he went into office about two years ago last January; I had a number of cases filed in his office as

court clerk; I am familiar with court cost matters; I got some contracts from attorneys to collect their rebates for them; I think I commenced the latter part of '32, and continued to be interested in it until February, '33; I had some contracts prior to '33; I made arrangements with Mr. W. G. Bray to check the records as to the amount of unused costs in each case and recover rebates for clients for him; Mr. Bray and I had contracts to collect their rebates; the contracts were in writing; defendant's exhibit No. 1, is the contract I refer to."

The defendant then detailed the number and cases in which he claims he had their written or verbal contract to collect the rebates, and insists he only received 25 per cent. on the rebates, and turned the balance in cash over to W. G. Bray for him to pay out to the parties to whom the rebates were due. Defendant insists that the money he collected was turned over to Mr. Bray, less 25 per cent. of the amount as his fee for collecting them.

W. G. Bray, testifying for the state, in rebuttal stated:

"I live in Oklahoma City at present; was formerly a resident of Purcell, McClain county, Okla.; I held the office of court clerk in McClain county, from January 5, 1931, to August 5, 1933, when I resigned; I signed the vouchers from one to eleven, inclusive, in state exhibit No. 1, and delivered the same to C. T. Rice; I am familiar with all the cases included in exhibits 1 to 11, inclusive; I did not tell C. T. Rice that I had authority from a lawyer, or lawyers in any of the cases, to collect rebates in court costs for them; I received some of the money represented in this exhibit one to eleven, but I did not receive 75 per cent. of that money. In the final windup I received slightly over 25 per cent. of the entire amount."

On cross-examination W. G. Bray stated:

"I resigned as court clerk on the 5th of August, 1933; I delivered vouchers one to eleven, to Mr. Rice; I did not

tell Mr. Rice when I delivered them to him that it only covered contracts that he and I had to collect money belonging to litigants, such as cost money due them; I did not tell him that no part of the money belonged to the county or state; I can't say I promised to give Mr. Rice a list of the cases, I don't recall."

Witness admitted a short while before he was arrested he mailed to the firm of Luttrell & Holland, of Norman, Okla., a small rebate in a case in which they were interested.

Several pages of the record are taken up in further cross-examination of the witness Bray who is one of the defendants named in the information but not on trial.

The defendant called Mrs. Cora Spain to show that she overheard a conversation in the office between the defendant and W. G. Bray, in which it is alleged that Bray told the defendant he would furnish a list of the cases showing the amount of rebate that was drawn. The evidence of the defendant shows that he received the money from the vouchers from one to eleven, and the evidence of the defendant shows that he retained 25 per cent. of the amount and turned the other over to W. G. Bray. W. G. Bray denies this statement, and says in the final settlement he received a little more than 25 per cent. of the amount withdrawn from the cases, included in the vouchers from one to eleven, being state exhibit No. 3.

There is a clear conflict in the evidence between the defendant and the witness W. G. Bray. The admission of the defendant that he received the vouchers introduced in evidence leaves the question as to what authority, if any, he had to withdraw the funds in connection with W. G. Bray, and keeping all or any part of the funds.

Several witnesses testified they did not authorize de-

fendant to withdraw their balance of unearned costs in the cases they had filed, and W. G. Bray testified he did not tell the defendant that he had contracts from any lawyer to collect the same.

The defendant has assigned several errors alleged to have been committed by the trial court sufficient to warrant a reversal. The only errors it is deemed necessary to consider are the sixteenth and seventeenth; that the court erred in overruling the motion of the defendant for a new trial; and that the court erred in overruling defendant's motion in arrest of judgment, which were duly excepted to at the time and exceptions noted.

The motion for a new trial includes all the other assignments, and for that reason it is not deemed necessary to set out in full the other assignments. The defendant argues with a great deal of force that the verdict of the jury is not sustained by sufficient evidence, and is contrary to the law, relying upon the case of Wyatt v. State, 21 Okla. Cr. 121, 205 Pac. 194, 196, in which the court said:

"If an agent, bailee, or servant does with the money or property of his principal only what he has been authorized to do, and has no felonious intent, he is not guilty of embezzlement." 20 Corpus Juris with annotations and numerous cases cited.

The citation quoted from the Wyatt Case is in the abstract correct, and is the law where the facts are sufficient to sustain the law as laid down in the quotation. In this case, however, the evidence shows that the defendant and W. G. Bray entered into a contract to withdraw this money from the treasury, which had been deposited by the different litigants, and there is not a word in the testimony to show that Rice was the agent of Bray. The record discloses an agreement between W. G. Bray and the

defendant, C. T. Rice, to withdraw the unearned rebates from the numerous cases pending in the court where Bray was the court clerk, and that in furtherance of that agreement money was withdrawn and used for their personal interest and benefit, Rice stating he retained 25 per cent. after he had cashed the vouchers at the bank and delivered the other to W. G. Bray. W. G. Bray stating that in the wind up of the settlement he received a little more than 25 per cent. of the money withdrawn belonging to the different litigants that had been deposited in the court funds where W. G. Bray was the court clerk.

The defendant argues forcibly and skillfully that the evidence fails to show that the defendant assisted Bray in doing any of the acts forbidden by section 7761, O. S. 1931. With this argument we cannot agree, for the reason that the contract between the parties was introduced in evidence, and each of them testified that the vouchers were made up by W. G. Bray, delivered to the defendant, C. T. Rice, and by him indorsed and cashed at the bank, clearly showing that the defendant in this case was not only assisting but aiding and abetting W. G. Bray in withdrawing the funds, the two, Bray and Rice, are charged with embezzling.

Section 7761, O. S. 1931, is very specific as to what a county treasurer, or other officer or person charged with collecting, receiving, safekeeping, transfer, or disbursing of the funds belonging to the state, county, precinct, district, city, town, or school district of the state, shall do with funds in their hands, as a public officer or a person charged with the duty of collecting the funds and safekeeping them.

The section also provides that if a person shall advise, aid, or in any manner knowingly participate in such act, such county treasurer or other officer or person shall be

deemed guilty of embezzlement of so much of said money or other property, as shall be converted, used, invested, or paid out, as aforesaid.

This court has passed upon the question of the evidence in many cases where there is a conflict in the evidence, and has held that where the evidence, and reasonable and logical inferences and deductions to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of the defendant, this court will not disturb the verdict for insufficiency. Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Campbell v. State, 23 Okla. Cr. 250, 214 Pac. 738.

It is further held that when the state's evidence is sufficient, if believed by the jury, to sustain a conviction, the judgment will not be reversed although the evidence may be conflicting. Taylor v. State, 21 Okla. Cr. 351, 207 Pac. 746; Jimmie Stroud v. State, 57 Okla. Cr. 273, 47 Pac. (2d) 883.

The evidence is sufficient to sustain the judgment.

The defendant assigns as error that the court erred in overruling his demurrer to the information. In Hays v. State, 22 Okla. Cr. 99, 210 Pac. 728, in paragraph 1(a) of the syllabus, this court held:

"That where an information states that any officer is by law charged with the receipt, safekeeping, transfer, or disbursement of money, and states that such money was embezzled and was not kept and disbursed as provided by law, but was appropriated to his own use, not in keeping with his trust, such averments are sufficient."

In State v. Virgil Harris et al., 47 Okla. Cr. 344, 288 Pac. 385, this court discusses the sufficiency of an indictment or information, and held that if an indictment or in-

formation set out the elements of the offense of embezzlement as contemplated in section 9781, C. O. S. 1921, now section 7761, O. S. 1931, in substantial compliance with the language of said section, it is sufficient.

The defendant next refers to the law under which he should have been sentenced, and cites section 2047, O. S. 1931, instead of section 7761, O. S. 1931. In State v. Bunch, 23 Okla. Cr. 388, 214 Pac. 1093, this court said:

"As between specific statutes prescribing different penalties for any offense, the state may elect to try an offender under either statute."

The defendant further urges that the court erred in giving instructions 5 and 9. After a careful consideration and examination of these instructions, when considered in connection with the other instructions given, we hold the instructions correctly advised the jury as to the law applicable to the facts, and the court did not err in giving the two instructions complained of.

There are other errors assigned by the defendant, but they are without merit. The defendant was accorded a fair and impartial trial. The court correctly advised the jury as to the law applicable to the facts. There are no errors in the record warranting a reversal. The judgment is affirmed.

EDWARDS and DOYLE, JJ., concur.