[No. 13785.    Department Two.    June 4, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. NATHANIEL L. WARD, *Appellant*.[1]

EMBEZZLEMENT— REQUISITES— INTENT—STATUTES— EVIDENCE.    Intent is the gist of larceny by embezzlement, under Rem. Code, § 2601, defining larceny of property in the possession of an agent "who, with intent to deprive the owner thereof," appropriates the same to his own use; and any fact intending to prove or disprove intent is admissible in evidence.

SAME—EVIDENCE—INTENT—ADMISSIBILITY.    Upon the prosecution of an attorney for the embezzlement of the proceeds of a mortgage sent to him for collection, which he dealt with as his own on the claim that he had traded another mortgage for it, it is admissible, upon the issue as to his good faith and intent, to show the circumstances of his transfer of the other mortgage to a bank and the arrangement he made with the bank for raising money to send to his client.

SAME.    In such case, it is admissible to show the statement of the client to a third person that he had made a trade with the accused for the mortgage, and at that time gave a receipt in full settlement of all claims; since it is a statement against pecuniary interest, and shows consent to the appropriation.

SAME—INSTRUCTIONS—INTENT.    Under Rem. Code, § 2601, making intent to deprive the owner of property the gist of a charge of embezzlement, it is prejudicial error to give an instruction to the jury making unlawful appropriation a crime without any intent to deprive the owner of property; and the word "unlawfully" in such an instruction is not the equivalent of felonious or fraudulent intent.

CRIMINAL LAW—TRIAL—INSTRUCTIONS.    In a prosecution for larceny by embezzlement, it is prejudicial error to refuse a proper instruction framed with reference to the circumstances of the case on trial, although the court covered the matter in an abstract statement in the language of the statute defining the offense.

[1]Reported in 165 Pac. 794.

Appeal from a judgment of the superior court for Klickitat county, Back, J., entered November 28, 1915, upon a trial and conviction of grand larceny. Reversed.

*McMaster, Hall & Drowley, Brooks & Brooks,* and *E. C. Ward,* for appellant.

*John R. McEwen* and *Miller & Wilkinson,* for respondent.

FULLERTON, J.—The defendant, Nathaniel L. Ward, was convicted of the crime of grand larceny and sentenced to a term in the penitentiary. The information charged that, while acting as attorney, agent, or trustee of Sarah C. Hughes and Peter Hughes, her husband, the defendant collected and came into possession of property of theirs, by reason of such relation,

"and did then and there, without the consent of the said Sarah C. Hughes and her husband, Peter Hughes, or either of them, wilfully, unlawfully, and feloniously embezzle said property, consisting of more than twenty-five ($25) dollars, lawful money of the United States of America, to wit, eight hundred fifty ($850) dollars, lawful money of the United States of America and of the value of eight hundred fifty ($850) dollars, said money then and there belonging to the said Sarah C. Hughes and her husband, Peter Hughes, by fraudulently and feloniously withholding and appropriating said money to his own use with intent to deprive and defraud the owners, to wit: Sarah C. Hughes and her husband, Peter Hughes."

The defendant appeals, assigning that the court erred in excluding certain evidence tendered by him, in giving certain instructions, in refusing to give certain instructions, in overruling a motion for a new trial, and in refusing to sustain a challenge to the sufficiency of the evidence.

Peter Hughes was the holder of a note for $1,000, dated March 1, 1910, payable on or before three years after date, which was secured by mortgage upon land in Klickitat county, Washington. The maker, one Smithson, having defaulted in the interest, the note was sent by Hughes to appellant, N. L.

Ward, then a practicing attorney residing in Goldendale, for the purpose of enforcing payment. On December 4, 1912, appellant, for Hughes and wife, instituted a foreclosure suit which was afterwards abandoned. The property had depreciated in value so that it was doubtful whether it was worth the full amount of the mortgage. The parties to the mortgage entered into negotiations for a reconveyance of the property in payment of the mortgage indebtedness, but this arrangement was never consummated. The appellant, in the course of his dealings with his client, Hughes, had offered to trade him for the obligation an $800 mortgage on land in Tillamook county, Oregon, due in the year 1913. Respecting this offer, Hughes wrote him as follows:

"Sallisaw, Oklahoma, November 25, 1913.
"Mr. N. L. Ward,
    "Attorney at Law,
    "Am answering your letter that I may have to take my place back. I want to say it will be too big expense to come back to Washington and if you still have the $800 mortgage on the Tillamook land can make a trade as you say the mortgage is good.          Yours truly,          Peter Hughes."

Appellant testified that he considered the trade as made, and dealt with the mortgage on the Klickitat land as his own, and held the note and mortgage on the Tillamook land for the benefit of Hughes without, however, assigning or indorsing them over to the latter. On December 1, 1913, the sum of $850 was paid to appellant in full settlement of the note and mortgage due Hughes, and a release, which had been executed by Hughes and wife on January 28, 1913, and turned over to appellant, was delivered to the mortgagor. This money received by appellant was deposited to his own credit and checked out by him as his own money. In February, 1914, the Tillamook mortgage, which appellant testified he regarded as the property of Hughes, was assigned to the Bickleton State Bank at Bickleton, Washington, on an indebtedness of the appellant to that bank. Hughes, having received no money on either the Klickitat or Tillamook mort-

gage, put his claim against appellant in the hands of the Gillett State Bank, of White Salmon, Washington, for collection. In June, 1914, appellant wrote the bank that he would "fix the Hughes matter up satisfactory," and on July 16, he again wrote the bank: "I have just received a letter from Mr. Peter Hughes and will fix the matter up as he suggests next week." On July 13, 1914, he had written Hughes:

"Relative to the Smithson matter, I will fix the matter up as you suggest in your letter and will pay you ten per cent interest on the note, and will pay you anything you have been out. I will pay you the $500 within next few days."

On August 19, 1914, he again wrote Hughes: "I will pay a part of the Smithson money to the bank tomorrow or next day." The appellant, however, made no payment to Hughes until after the filing of the information against him. On January 2, 1915, he paid Hughes in full the sum of $872.30. The fact of payment was admitted in evidence, but the court excluded other recitals in the receipt tending to exonerate the appellant.

The statute under which the respondent was prosecuted provides that:

"Every person who, with intent to deprive or defraud the owner thereof—   . . .
"(3) Having any property in his possession, custody or control, as   . . .   attorney, agent, employee, trustee, . . . shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto;   . . .
"Steals such property and shall be guilty of larceny." Rem. Code, § 2601.

The gist of the offense of larceny by embezzlement is the intent of the party charged to deprive or defraud the owner by withholding or appropriating his property. Any fact tending to prove or disprove that intent is properly admissible in evidence. The rule is stated in 15 Cyc. 529, as follows:

"Since from its nature intent is incapable of direct proof, great latitude is necessarily allowed in proving this element

of the offense.   Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other hand to show the *bona fides* of the accused."

The defense in this case was that the appellant had traded his Tillamook mortgage for the Klickitat mortgage belonging to Hughes.   The evidence showed that, after this alleged trade and after appellant had used the proceeds of the Klickitat mortgage as his own, he made an assignment of the Tillamook mortgage to the Bickleton State Bank.   The defense sought to prove by the appellant under what circumstances this transfer was made and what arrangements he had made with the bank for raising money to send to Hughes.   This testimony was excluded.   It was already in evidence that appellant, in his letters, had been promising to get the money for Hughes and was not denying liability.   This testimony had a direct bearing upon the question of his good faith, and while not conclusive in itself was admissible for the purpose of showing good faith.   We think it was error on the part of the court to exclude it.

In substantiation of appellant's defense that he had a right to dispose of the proceeds of the Klickitat mortgage as his own money, he offered to prove by the witness S. A. Rossier, who had visited Hughes in Portland, Oregon, for the purpose of paying over the money due him from appellant, that Hughes stated in a conversation held on January 2, 1915, that he had made a trade with appellant of his mortgage on the Klickitat property for a mortgage on Tillamook property, and that the witness, at that time, took from Hughes a receipt as follows:

"Jan. 2nd, 1915, received from N. L. Ward, $872.30 in full settlement of all claims against him, and particularly for all money due me on the land in Tillamook county for which my Klickitat mortgage was exchanged.     Peter Hughes."

The prosecution was based on the theory that appellant had embezzled the money derived from a note and mortgage

`originally placed in his hands for collection, while the defense was that appellant became the lawful owner of this note and mortgage through a trade made with his principal. The evidence was relevant and material upon that issue. The action of the court in excluding it seems to have been based upon the ground that it was hearsay evidence. It is said in 2 Jones, Commentaries on Evidence, § 323:

"It has long been settled as one of the exceptions to the general rule, excluding hearsay, that the declarations of persons since deceased are admissible in evidence, provided the declarant had peculiar means of knowing the matter stated, if he had no interest to misrepresent it and if it was opposed to his *pecuniary* or proprietary *interest*. . . . In this country the law is more liberal, and it has been held that absence from the state, so far as it affects the admissibility of secondary evidence, has the same effect as the death of the witness."

See, also, *Alter v. Berghaus,* 8 Watts (Pa.) 77; *Walnut Ridge Mercantile Co. v. Cohn,* 79 Ark. 338, 96 S. W. 413; 2 Wigmore, Evidence, § 1456.

The state seeks to avoid the effect of this rule on the theory that the declarations made by Hughes were not against his pecuniary interest, for the reason that he had been paid what was due him and he had no further interest in the subject-matter. But it seems to us this is not the proper view to take of the situation. He was an essential factor in the prosecution; it was based on the alleged embezzlement of his money, and the proceedings had been set in motion by his wife, acting as his agent, in the capacity of prosecuting witness. He had a pecuniary interest in the money which the accused was charged with appropriating. If he made a statement to the effect that the accused owed him no money, when all the evidence shows that the accused had been in his debt, that is surely a declaration against his pecuniary interest. But even if the recitals in the receipt, made after the fact of payment, should be in any sense inadmissible, the reasoning of the state would not apply to the offered testimony of witness

Rossier, as to statements made by Hughes at the time of their meeting and before the money had actually passed. There was in evidence a letter from Hughes to appellant in which the former agreed to take the Tillamook mortgage in exchange, tending to show that the parties were dealing with one another on that understanding. It seems to us that these declarations of Hughes were against interest and that their exclusion was prejudicial error.

We further think such evidence was admissible for the purpose of showing consent on the part of the prosecuting witnesses to the appropriation for which it is sought to criminally charge appellant. *Lockett v. State*, 59 Tex. Cr. 531, 129 S. W. 627; *Pye v. State*, 74 Tex. Cr. 322, 171 S. W. 741; Wharton, Criminal Law (11th ed.), §§ 381, 1226.

The following instruction given by the court is assigned as error:

"You are instructed that the intention to restore, repay or replace money or property wrongfully and unlawfully appropriated, does not take from the act its criminal character, and in this case, if you find from the evidence beyond a reasonable doubt, that the defendant wrongfully and unlawfully appropriated the property belonging to the parties alleged, the fact, if you should find it to be a fact, that at the time he made the appropriation he intended to repay or replace at some future time, the money wrongfully and unlawfully appropriated, would not take from the act its criminal character, and the defendant would be liable."

We think the objection to this instruction is well taken. Under Rem. Code, § 2601, intent to deprive or defraud the owner is an essential element in the crime of larceny by embezzlement. The instruction complained of makes unlawful or wrongful appropriation of another's property without any intent to deprive him thereof a crime. Such an instruction is not in accord with the statutory definition of the crime, nor with the authorities.

"The word unlawfully where used in the instruction does not supply the place of the word felonious, or the words fraud-

ulently, etc., for while defendant may have unlawfully converted the money to his own use, it does not necessarily follow that he did so with a felonious or fraudulent intent, and unless he did so with such intent he is not guilty of embezzlement, although the statute does not in express terms require that there should be a criminal intent." *State v. Cunningham*, 154 Mo. 161, 55 S. W. 282.

"Where defendant having borrowed a diamond ring pawned it with intent to redeem it, and without any fraudulent intent to permanently deprive the owner of the property, he was not guilty of theft as bailee; the fraudulent intent existing at the time of the conversion being an essential element of the offense." *Taylor v. State*, 50 Tex. Cr. 377, 97 S. W. 473 (Syllabus).

"The rule of law, with some exceptions, which do not apply to our case is this: That when an act is forbidden by law to be done, the intent to do the act is the criminal intent and the law presumes the intent from the commission of the act; but when an act becomes criminal only by reason of the intent, unless the intent is proved the offense is not proved, and this intent must be found by the jury as a fact from the evidence. It is for them to infer it, and not for the court. . . . This shows clearly that the mere act of converting the property to the defendant's own use is not sufficient to constitute the offense, and that it is incumbent upon the state to go a step farther and prove that it was done with a fraudulent purpose." *State v. McDonald*, 133 N. C. 680, 45 S. E. 582.

See, also, *State v. Lentz*, 184 Mo. 223, 83 S. W. 970; *State v. Reilly*, 4 Mo. App. 392; *Tashima v. People*, 58 Colo. 98, 144 Pac. 200.

The following instruction requested by appellant was refused by the court:

"You are instructed that, under the laws of the state of Washington, if a person in converting property to his own use does so under a *bona fide* claim of title thereto, he is not guilty of the crime of larceny, although his claim of title was not good, and in this case you are instructed that if the defendant after negotiating with Peter Hughes for a trade believed that this note in question was his and so believing used the proceeds as his own, you cannot find the defendant guilty."

This instruction was addressed to the facts in evidence, while the court in its charge merely covered the matter by an abstract statement in the language of the statute defining the offense of larceny by embezzlement. It is said in Brickwood's Sackett on Instructions to Juries, § 179:

"Instructions should be framed with reference to the circumstances of the case on trial, and not be expressed in abstract and general terms, when such terms may mislead instead of enlightening the jury."

See, also, Blashfield, Instructions to Juries, § 92; *State v. McCann*, 16 Wash. 249, 47 Pac. 443, 49 Pac. 216; *State v. Rolette*, 94 Wash. 94, 161 Pac. 1042. We think that the refusal of the foregoing instruction constituted prejudicial error.

The other instructions requested and refused were sufficiently covered by those given by the court.

The challenge to the sufficiency of the evidence was properly denied. The contention is that the evidence on the part of the state did not tend to prove the crime alleged, that it tended to show the conversion of a check or credit while the charge is a conversion of money; but without further reviewing the evidence, we find no merit in the contention.

For the errors indicated above in the exclusion of evidence and the giving and refusal of instructions, the judgment of conviction is reversed and a new trial awarded.

ELLIS, C. J., MOUNT, and PARKER, JJ., concur.

HOLCOMB, J., concurs in the result.