[No. 14711.  Department Two.  September 16, 1918.]

THE STATE OF WASHINGTON, *Respondent*, v.
ROBERT A. HOOD, *alias F. P. Eastman,*
*Appellant.*[1]

WITNESSES—IMPEACHMENT — COLLATERAL MATTER — CREDIBILITY—
CORROBORATION. In a prosecution for murder, in which the where-
abouts of a certain witness at a certain time was material and in
direct conflict, the witness having denied upon cross-examination
that she had then gone to her barber shop and had been spoken to
by a policeman, her impeachment by the policeman in rebuttal is
not upon a collateral matter and is proper upon the issuable cir-
cumstance and her credibility, and to sustain the credibility of wit-
nesses contradicting her.

CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—MA-
TERIALITY. In a prosecution for murder, newly discovered evidence
that an accessory had inquired the way to accused's room at 3
o'clock on the morning of the murder, did not go to an issue of fact
and is not ground for a new trial, where both the accessory and ac-
cused and another witness testified that he called at the room two
hours earlier.

SAME—APPEAL—MISCONDUCT OF COUNSEL. Error cannot be as-
signed upon improper argument of counsel where no objection was
made at the time or opportunity given the court to correct the
error.

Appeal from a judgment of the superior court for
Spokane county, Blake, J., entered March 28, 1917,
upon a trial and conviction of murder. Affirmed.

*Crandell, Williams & Crandell,* for appellant.
*John B. White,* for respondent.

CHADWICK, J.—Appellant was convicted of the mur-
der of one Margaret Braun. The murder occurred on
Sunday night, November 11, 1916. At the time the
woman was murdered, certain of her property was
carried away in two suitcases. The principal witness
for the state was James Weston, who, by his confes-

[1]Reported in 175 Pac. 27.

sion, makes himself an accessory to the crime. His testimony is that, after the murder, the suitcases were carried by appellant and himself to the appellant's room in the Granite block. The appellant, who at the time and for some time prior thereto had been living with a woman by the name of Vivian Tozier, testified that, after they had gone to the room of the appellant, they examined the property and that the Tozier woman said that the plunder was worthless and insisted that the suitcases be removed from the rooms; that Weston took one of the suitcases and left it in a cafe, the other being removed on the next night by the Tozier woman, who left it in a stairway near the Tourist hotel, where the murder was committed.

The appellant and the woman testified that she was not out of the apartments occupied by them between Sunday afternoon and the following Wednesday morning. This made a direct conflict in the testimony between the appellant and the woman on the one side and Weston on the other. She was asked on cross-examination if, as a matter of fact, she was not at her barber shop at the hour of 1:15 on Monday morning, November 12, where she remained five minutes · or more, and that, either in going or returning therefrom, she had not·been spoken to by a police officer by the name of Whalen. She denied that this was so. The police officer was called in rebuttal. He testified that he saw her on Monday morning on the street; that he saw her go into her barber shop; that she was followed at some distance by two men; that, when they saw him, they stood over on the curb line and looked into the shop at her and looked at him; that·the time was about a quarter after one o'clock; that, after she left the shop, she went past him saying: "Did you speak to me, officer, when you went by?" That he replied, "No, I did not speak to you." She said, "Well, I thought

you did.'' He said, ''If I had of spoken to you, you would have heard me.'' He further testified that she then went back to the shop, but before doing so said, ''There was some men wanted me to get them some booze, but I did not do it;'' that she passed on down the street; that one of the men, to whom he had referred, whistled to her, then called her, and she walked across the street and talked to him for a few minutes, after which the three of them went on to the Buckley Cafe.

Counsel for appellant objected to this testimony upon the ground that it was an attempt to impeach the witness upon a collateral matter. This is the first error assigned. That a party is bound by the testimony of an adverse witness upon a collateral question is well established. *State v. Schuman*, 89 Wash. 9, 153 Pac. 1084, Ann. Cas. 1918A 633.

While counsel suggests the rule, they misconceive the nature and character of the testimony offered to impeach the witness. It was neither collateral nor irrelevant. It went to the subject-matter of the inquiry. The disposition of the suitcases was a material circumstance and most essential to the establishment of the identity of the murderers. If the witness had testified that she was an unmarried woman, the state would have been bound by her answer, for that fact would have been entirely collateral and irrelevant, but if she had testified that she was not in her room at the time the witness says she was there and took the suitcase away, the state could prove her presence by other witnesses, for two reasons: Her whereabouts at the time became an issuable circumstance in the chain of events, and her credibility as a witness became an issue of fact for the jury.

''An inquiry touching the capacity of a witness to give correct testimony is not collateral or irrelevant

within the meaning of the rule.'' 7 Ency. of Evidence, p. 86.

''A witness' acts variant from his testimony on the stand may ordinarily be shown to impeach him . . . Where a witness testifies to the ideals, conduct, acts, intent or motives of himself . . . specific acts of his at variance with his representations may be proved.'' Id., p. 149.

''The acts and conduct of a witness relative to the matter in controversy which are inconsistent with his testimony, likewise his motives, interest, or animus as connected with the cause, or with the parties thereto, may be proven for the purpose of weakening the force of his testimony. And for the same purpose it is proper to admit evidence of statements made by the witness relative to matters material to the issues contradictory of his testimony on the trial. As to all of these matters, if a witness denies or fails to admit the imputed act, conduct, motive, interest, animus or contradictory statement when interrogated about them on cross-examination, he may be contradicted by other testimony proving them.'' *Stewart v. State,* 42 Fla. 591, 28 South. 815.

In *Commonwealth v. Goodnow,* 154 Mass. 487, 28 N. E. 677, which was a prosecution for keeping intoxicating liquors with intent to unlawfully sell the same, a witness testified that he had not drunk intoxicating liquors on the premises within two years. It was held that he might be contradicted by evidence tending to show that he had been intoxicated repeatedly during that time.

In *State v. Watson,* 102 Iowa 651, 72 N. W. 283, a witness testified that he was never at a certain place in his life. The state was permitted to show that he was there on or about a particular date. The testimony was received not only for the purpose of impeaching the witness, but in rebuttal of the main issue.

In *Fitzgerald v. Williams,* 148 Mass. 462, 20 N. E. 100, the witness denied a former visitation to a house

of ill-fame. It was held competent to prove the fact as tending to contradict him.

In *De Sailly v. Morgan,* 2 Esp. 691, the witness testified that he had paid much attention to the morals as well as the education of the boys of a certain school. Lord Kenyon held that a letter written by him which contained immoral passages that were inconsistent with the duty of a preceptor was admissible.

Although it seems not to have so impressed counsel for either party to this appeal, it occurs to us that this court has held in line with these authorities. In *State v. Burton,* 27 Wash. 528, 67 Pac. 1097, the defendant testified that he had not solicited an opportunity to plead guilty to petit larceny. Two witnesses were introduced for the purpose of proving that he had made such application. The court held that "ground for impeachment had been laid upon his cross-examination and we think that the testimony was properly received, either in rebuttal or as impeaching testimony." See, also, *State v. Stone,* 66 Wash. 625, 120 Pac. 76.

The witness Vivian Tozier having testified that she had not left her rooms between Sunday afternoon and Wednesday morning, and having denied upon cross-examination that she had gone to her barber shop or that officer Whalen had spoken to her, the testimony was properly received in rebuttal to sustain the credibility of the witness Weston and to impeach the credibility of the witness Tozier. This assignment is without merit.

The next error assigned is that the appellant was convicted upon the uncorroborated testimony of the witness Weston, and that the court erred in denying a new trial on the ground of newly discovered evidence. After the trial, one Foster made affidavit that, at about three o'clock in the morning after the murder had been

committed, Weston came to his room in the Granite block and inquired the number of appellant's room and that he directed him to it. Both appellant and the Tozier woman testified that Weston had been in their rooms before. The woman had testified that he had come to their room between 12 and 1 o'clock on the night of the murder with two suitcases. Appellant testified in the same way, saying that Weston had come about 1 o'clock, that he took one suitcase away and returned about 3 or 4 o'clock in the morning. All the witnesses agreed that Weston had been in the apartments occupied by the appellant and the Tozier woman at least two hours before it is said that he inquired of Foster. The testimony offered goes to no issue of fact and, if taken as true, would not in any way indicate that the story told by the three principal parties to the transaction was not also true. If Weston's presence in appellant's apartments at an earlier hour were denied, a different question would be presented.

It is also assigned that counsel for the state was guilty of misconduct in that his argument to the jury was improper; no objection was made at the time and no opportunity given to the court to correct the error, if it be such, by admonition, discipline or by admonishing the jury. The record is made by affidavit filed subsequently. The objection is not timely and, under the rule announced by this court in *State v. Johnson, ante* p. 59, 173 Pac. 723, where former decisions are collected, it will not now be considered.

All of the other assignments of error go to the sufficiency of the evidence. It will serve no purpose to review the harrowing details of the murder or the events following it. It is enough to say that the jury was convinced beyond a reasonable doubt of the guilt of the appellant. The testimony of the state was ample, if

believed by the jury, to sustain the verdict rendered. Being thus sustained, the judgment is affirmed.

MAIN, C. J., MOUNT, HOLCOMB, and MACKINTOSH, JJ., concur.