[No. 15920.   Department Two.   January 19, 1921.]

THE STATE OF WASHINGTON, *Respondent,* v. A. W. ELY, *Appellant.*[1]

CRIMINAL LAW (301)—TRIAL—INSTRUCTIONS — FORM AND LANGUAGE. It is not error to refuse a request to address the instructions to each juror individually, where correct general instructions to the jury as a body covered the question.

SAME (314)—TRIAL—MISLEADING INSTRUCTIONS—REQUESTS—SPECIAL ISSUES—ABSTRACT INSTRUCTIONS. An instruction to acquit if the jury can reconcile the evidence upon any reasonable hypothesis consistent with innocence, sufficiently covers a requested instruction to acquit, if the evidence raises a reasonable doubt that the charge made by the prosecuting witness was induced by nervousness or a mistake; especially where the requested instruction would have been misleading.

CRIMINAL LAW (451) — APPEAL — HARMLESS ERROR—ARGUMENTS AND CONDUCT OF COUNSEL. It is not prejudicial misconduct for the prosecuting attorney to announce that the state waives any criminal prosecution, upon the accused's refusing to answer a question on the

[1]Reported in 194 Pac. 988.

ground that it might tend to incriminate him, when the court was not requested to specially advise the jury to disregard it.

RAPE (1, 27)—ELEMENTS OF OFFENSE—UNCONSCIOUSNESS OF FE- MALE—EVIDENCE OF—SUFFICIENCY. Accused may be guilty of rape as defined by Rem. Code, § 2435, subd. 5, by having sexual intercourse with a woman who was at the time known by him to be "uncon- scious of the nature of the act," notwithstanding she was not uncon- scious in the sense of having lost her senses, it only being necessary that she did not know what he was doing.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered December 8, 1919, upon a trial and conviction of rape.   Affirmed.

*Sharpstein, Smith & Sharpstein,* for appellant.
*Earl W. Benson* and *A. J. Gillis,* for respondent.

MOUNT, J.—The defendant in this action was con- victed by a jury on a charge of rape.   The information upon which the defendant was convicted recites that the defendant on the third day of July, 1919,

"did    .   .   .    perpetrate an act of sexual inter- course with Ruth C. Stewart, a female over the age of ten years, and against the will and without the consent of the said Ruth C. Stewart.   The said Ruth C. Stew- art then and there not being the wife of said A. W. Ely and she then and there being unconscious of the na- ture of said act of sexual intercourse and that such un- consciousness on the part of said Ruth C. Stewart was then and there known to said defendant A. W. Ely."

On the trial of the case, Miss Stewart testified, in substance, that, on the third day of July, 1919, she went to the office of the defendant, who is a doctor, for the purpose of getting some glasses left there to be re- paired; that while she was there she told the defend- ant that she was going to another doctor to be exam- ined physically because she was of the impression that she had appendicitis; that Dr. Ely told her he was a physician and would make the examination; that he

thereupon had her get upon an operating table; that he examined her in order to determine whether she was afflicted with appendicitis; that he found no symptoms of appendicitis; that he thereupon examined her with reference to her ovaries; that in order to do this he put her feet in some stirrups on the operating table, elevated her knees and placed a sheet over her knees and after a digital examination, committed the crime of rape upon her; that, as soon as she discovered what he was doing, she got down from the table, called him a "darn fool" and left the office. Thereupon she went to a friend and explained to the friend what had occurred. The friend called the prosecuting attorney, and the three of them, in the afternoon of that day, returned to the doctor's office and asked him for an explanation. That afterwards she was examined by two other doctors.

The appellant argues, first, that the court erred in refusing to give the following instruction:

"Before the defendant can be convicted, each member of the jury must be satisfied beyond a reasonable doubt, as defined in these instructions, and if any one of you after having consulted with the other members of the jury, entertains such a reasonable doubt, then such member of the jury will not be justified in finding the defendant guilty."

It is argued by the appellant that this instruction is correct for the reason that, if any juror is not convinced of the defendant's guilt beyond a reasonable doubt, it is the duty of that juror to vote for an acquittal. It is conceded that, in the case of *State v. Robinson,* 12 Wash. 491, 41 Pac. 884, and *State v. Cushing,* 17 Wash. 544, 50 Pac. 512, this court held that an instruction of this character was not required to be given. It may be correct to say that, if any juror has a reasonable doubt of the guilt of the accused, such

juror is not required to vote for a conviction, but we think it is not necessary that the court should give this specific instruction, especially where the general instruction covers the question as it does in this case. Since the case of *State v. Robinson, supra,* we have held in a number of cases that a requested instruction of this character need not be given. The latest case upon this question is *State v. Chittenden,* 111 Wash. 213, 190 Pac. 232. We do not desire to depart from the rule which has been followed in this state since the 12th Washington above noted. There was no error therefore in refusing this instruction.

Appellant also argues that the court erred in refusing to give the following instruction:

"You are instructed that, if the evidence in this case raises a reasonable doubt in your mind that the charge made by Miss Stewart was superinduced by nervousness or by a mistake or understanding as to what actually occurred, you should give the defendant the benefit of the doubt and acquit him."

The court in his instructions to the jury had defined a reasonable doubt, and had told the jury the elements which were necessary to be proved and in that connection the court told the jury:

"If you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence, you should do so, and in that case, find him not guilty."

We think these instructions were sufficient to cover the question presented by the instruction requested. It is no doubt true, as we said in *State v. Ward,* 96 Wash. 550, 165 Pac. 794, that

"Instructions should be framed with reference to the circumstances of the case on trial, and not be expressed in abstract and general terms, when such terms may mislead instead of enlightening the jury."

We think the instruction given in this case had no tendency to mislead the jury, while the instruction offered, we think, had that tendency. It is true that Dr. Ely, when testifying in his own behalf, testified that women who are subject to discharges such as are commonly known as lochiorrheal discharges are frequently very nervous; that women of that type are what is known as neurasthenics and they are more or less highly sensitive. But it was not shown that the prosecuting witness was suffering from lochiorrheal discharges nor was there any evidence to the effect that she was nervous while she was being examined. The only evidence of nervousness at all was that, when she discovered what the doctor had done or was attempting to do, she immediately got off the table, was angry and left the room. But there was no evidence in the record that she was a neurasthenic. It follows that it was not the duty of the court to give the instruction, because the instruction requested would have been misleading.

It is next argued on behalf of appellant that the court should have discharged the jury during the trial on account of the misconduct of the prosecuting attorney. Upon the trial, while Dr. Rhodes was testifying as a witness in behalf of the state, he was asked this question:

"Did you give her (Ruth Stewart) any professional treatment at that time? A. I did, yes, sir. Q. State what it was. State the condition you found her in and what you did. A. My answer might tend to incriminate me."

Counsel for the state then said:

"I think in an action for rape, no criminal prosecution could lie against a physician giving any treatment within a few hours after the offense is alleged to have been committed, for the prevention of conception.

THE COURT: I have no view on it, if you have any authority, I will hear you; it is possible that is the law. Q. I will ask you Dr. Rhodes, if you gave Ruth Stewart any treatment tending to prevent an infection to which she might have been exposed."

An objection to this question was sustained. The doctor then answered:

"I can answer as to the examination, but not as to the treatment. Q. Now, doctor, I want to repeat the question that I asked you a while ago, and do not answer it until the court directs you to, and before submitting the question the state here and now waives any prosecution."

Counsel for appellant objected to that statement. Then the prosecuting attorney said:

"We waive any prosecution of Dr. Rhodes for any treatment that he may have given Ruth Stewart on or about the 3rd day of July, 1919, and this is for the purpose of qualifying him as a witness for the state. Q. Now I will ask you, doctor, what treatment did you give Ruth Stewart, when she called at your office on the 3rd day of July, 1919?"

Thereupon counsel for the appellant moved the court to discharge the jury on the ground, "that it will be impossible from this time on for the defendant to have a fair and impartial trial under the actions taken by the prosecuting attorney." This motion was denied and an exception taken, and it is now argued that the court erred in not discharging the jury.

We assume, without deciding the question, that this was misconduct of the prosecuting attorney, but we are clearly of the opinion that it was not such misconduct as to require the discharge of the jury. We have held several times that, where the prosecuting attorney is guilty of misconduct, it is the duty of the de fendants to ask the court to specifically direct the attention of the jury to the improper conduct and advise

that such conduct is not to be considered by them. In the case of *State v. Johnson,* 103 Wash. 59, 173 Pac. 723, we said:

"We have held frequently that a mere objection to improper argument on the part of an attorney is not enough; for, being bound to credit the jury with common understanding, we must, in the interest of finality in judicial proceedings, presume that the jury would understand that the argument to which an objection has been sustained was not to be considered in making up a verdict. If the misconduct is such as to warrant the belief that an improper impression may be carried away by the jury, it is incumbent upon the appellant to ask the court to specially direct the attention of the jury to the improper argument and to advise it that such argument is not to be considered. *State v. Regan,* 8 Wash. 506, 36 Pac. 472; *State v. Bailey,* 31 Wash. 89, 71 Pac. 715; *State v. Meyerkamp,* 82 Wash. 607, 144 Pac. 942; *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486; *State v. Johnson,* 83 Wash. 1, 144 Pac. 944."

See, also, *State v. Hood,* 103 Wash. 489, 175 Pac. 27. No request was made for the court to tell the jury not to consider the misconduct of the prosecuting attorney.

Counsel for appellant relies upon the rule in *State v. Montgomery,* 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119. That was an extreme case where the prosecuting attorney deliberately "stated to the court, in the presence of the jury, that the witness had stated the contrary to him many, many times; that the witness had been tampered with, and bought, etc." In that case we held that there could not be a fair trial to the jury because of the misconduct of the prosecuting attorney. But the case at bar, we think, falls far short of any intention on the part of the prosecution to mislead either the court or the jury. There was

no reversible error in denying this request to discharge the jury.

Appellant also argues that the evidence is insufficient to justify a conviction. We deem it unnecessary to discuss or even set out more in detail the facts in the case. We are convinced from reading the entire record that there was sufficient evidence to go to the jury.

Appellant finally argues that, since this prosecution was had under § 2435 of the statute (Rem. Code), which defines rape as, ''an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent. Every person who shall perpetrate such an act of sexual intercourse with a female of the age of ten years or upward not his wife . . . (5) When she is at the time unconscious of the nature of the act, and this is known to the defendant''
there can be no conviction where the prosecuting witness is a grown woman of education in the possession of all her faculties, not sleeping, drugged or stupefied in any way. Subdivision 4 of that section provides:

''When her resistance is prevented by stupor or weakness of mind produced by an intoxicating narcotic or anesthetic agent administered by or with the privity of the defendant; or (5) When she is at the time unconscious of the nature of the act, and this is known to the defendant.''

We think, under subd. 5 of that section, it is necessary that the proof shall go to the effect that she was unconscious of the nature of the act—that is, that she did not know that the act was being perpetrated upon her.

The evidence in this case, if the prosecuting witness is to be believed, is to the effect that she supposed the doctor was examining her physically with his fingers

and that she did not know at first that he was doing anything wrong. We are of the opinion that it was not necessary for her to be unconscious in the sense that she had lost her senses, but that she might have all her faculties and not know of the nature of the act at the time it was being done. The prosecuting witness testified that she did not know what the doctor was doing until after he had committed the crime.

We find no reversible error in the record. The judgment must therefore be affirmed.

HOLCOMB, MITCHELL, MAIN, and TOLMAN, JJ., concur.