THE STATE v. W. W. GILLUM, Appellant.—77 S. W. (2d) 110.

Division Two, December 1, 1934.

*Roy D. Williams, A. B. Hoy* and *A. J. Bolinger* for appellant.

71

*Roy McKittrick*, Attorney General, and *Covell R. Hewitt*, Assistant Attorney General, for respondent.

TIPTON, J.—By an indictment returned by the grand jury of Morgan County, Missouri, the appellant was charged with embezzlement from the Bank of Barnett. On change of venue the case was sent to Cooper County, Missouri, where appellant was found guilty and sentenced to two years in the penitentiary. He has duly appealed to this court.

The appellant became president of the Bank of Barnett, Missouri, when it was established about twenty-eight years ago, and held that position as long as the bank continued to function. Following the World War the bank was prosperous until the sudden decline in value of live stock. Many of the borrowers of the bank were unable to pay their loans and a large part of its assets became "frozen."

On November 1, 1931, the bank was placed in the hands of the Finance Commissioner.

The principal contention of the State was that $1500 was embezzled from Daisy Weaver's account. Appellant claimed the loan was made to him personally while Miss Weaver claimed she made the loan to the bank. After the failure of the bank appellant called a meeting of his personal creditors at his home where Miss Weaver acted as secretary. A petition in bankruptcy was filed against appellant and his wife. Miss Weaver filed a claim for $1500 in the bankruptcy estate. Other pertinent facts will be stated in the course of this opinion.

I. Appellant contends that it was a reversible error for the court to refuse his requested Instruction D, which is as follows:

"The court instructs the jury that if you find and believe from the evidence that the money charged in the indictment to have been embezzled by the defendant was money paid into the Bank of Barnett by witnesses H. K. Currence and Daisy Weaver for the purpose of having it loaned by said Bank and was received by said Bank for that purpose, and that afterwards the said witnesses agreed to loan said moneys to defendant, or that the defendant, in good faith, understood and believed that they had so agreed, even though he was mistaken in that belief, then the transfer of that money from the Bank's account to defendant's account does not constitute any evidence of an intent on the part of defendant to defraud said Bank, and you must acquit him."

In regard to the Weaver transaction the appellant testified, "I asked if I could have her money in the event I needed it and she said yes and I borrowed it." Other witnesses for the defense testified that Miss Weaver had lent the money to the appellant. Miss Weaver testified that she lent the money to the bank. There was also testimony to the effect that he borrowed money from H. K. Currence. The sole defense in the case was that the appellant borrowed the money for his personal use and therefore the only issue was intent.

In the case of State v. Hurley, 234 S. W. 820, l. c. 823, we said:

"To constitute embezzlement there must be, as in larceny, a fraudulent intent to deprive the owner of his property, and appropriate the same. [20 C. J. 433.] . . .

"Unless the appellant withheld said stock with felonious and fraudulent intent to appropriate it to his own use, he is not guilty of embezzlement. [State v. Britt, 278 Mo. 510, 213 S. W. 425.] Embezzlement was not known to the common law; it is purely a statutory offense and as to such offense, it is said:

" 'There must be evil intent, though the statute is silent on the subject.' [1 Bishop's Criminal Law (6 Ed.), sec. 345.] . . .

"Appellant's claim against witness Sutter did not have to be well founded in order to exculpate him from fraudulent intent, for it is the rule that—'If property is converted without concealment, and under a *bona fide* claim of right, the conversion is not embezzlement, however unfounded the claim may be.' [20 C. J. 436.]

"In this case the appropriation, if there was such an appropriation, was made upon a claim which three lawyers had advised appellant he would have a right to use as a bases for such appropriation. Appellant committed no criminal act when he acted upon what he believed to be a meritorious claim. [State v. Reilly, 4 Mo. App. 392.] In the Reilly case, supra, it was well said that a conversion is not punishable unless done with intent to commit a crime, as there can be no crime without a criminal intent. [See, also, State v. Pate, 268 Mo. 431, 188 S. W. 139.] To the same effect this court ruled in the case of Gordon v. Eans, 97 Mo. 587, l. c. 609, 4 S. W. 112, 11 S. W. 64, 370."

In the case of State v. Reilly, 4 Mo. App. 391, l. c. 399, the court said:

"It is impossible to imagine an act of conversion which will be at the same time criminal and yet done in good faith. If the defendant really believed, although mistakenly, that he had a claim against his principal, and in good faith undertook to secure himself against loss, the essential element of criminal intent was wanting, and so there could be no crime."

The question in this case was as to how the transaction was conducted. Under these circumstances the matter of good faith on the part of the appellant was the sole issue. If Instruction D had been given the question of good faith on part of the appellant would have been properly submitted to the jury. It was error to refuse this instruction.

Another reason that this instruction should have been given is that it is a converse of the two instructions given on behalf of the State that directed a verdict in its behalf. The matter covered by Instruction D was not covered by any other instruction. Under these circumstances, it is reversible error to refuse such a converse instruction. [State v. Ledbetter, 332 Mo. 225, 58 S. W. (2d) 453, and cases cited therein.]

■ II. The appellant assigns as eror the giving of Instruction 8, which is as follows:

"The court instructs the jury that the law presumes that every man intends the natural and probable consequence of his own acts, and if you find from the evidence that the defendant unlawfully converted the money alleged in the indictment, or any portion thereof to the value of Thirty Dollars or more, to his own use, you will be authorized to infer therefrom the criminal intent, and that he did

intend at the time to embezzle and convert the same to his own use and to deprive the Bank of Barnett, a corporation, of the same.''

This instruction informed the jury that if they found from the evidence that the appellant ''unlawfully converted'' the money then the jury would ''be authorized to infer therefrom the criminal intent and that he did intend at the time to embezzle and convert the same to his own use. . . .'' This instruction is erroneous in that it failed to require the jury to find that the appellant ''feloniously'' or ''fraudulently'' converted the money.

In the case of State v. Pate, 268 Mo. 431, l. c. 437, 188 S. W. 139, we said:

''The instruction under consideration merely requires the jury to find that the defendant *unlawfully converted* the property without the assent of the owner. The term 'convert' does not imply any criminal intent. It is defined in Black's Law Dictionary, p. 267, as follows: 'An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their conditions or the exclusion of the owner's rights.' It is said that every unauthorized taking of personal property, and all intermeddling with it, beyond the extent of authority conferred, in case a limited authority has been given, with intent to so apply and dispose of it as to alter the condition or interfere with the owner's dominion, is a conversion. [Laverty v. Snethen, 68 N. Y. 522; Feild v. Sibley, 77 N. Y. Supp. 252; Watt v. Potter, 29 Fed. Cases, 438; Railroad v. Lawson, 88 Ky. 496; Abrahams v. Southwestern R. R. Bank, 1 S. C. 441.] A wrongful intent is not an essential element of a conversion. It is enough that the rightful owner has been deprived of his property by some unauthorized act by another assuming dominion or control over it. [Klein v. Cohen, 127 N. Y. Supp. l. c. 174, 142 App. Div. 500; Ferra v. Parke, 23 Pac. l. c. 885; Pease v. Smith, 61 N. Y. 477; Trust v. Tod, 170 N. Y. 233; Mohr v. Langan, 162 Mo. 474; Velzian v. Lewis, 16 Pac. 631.]

''There can be conversions under such circumstances as to not constitute a crime, and the term, 'unlawful,' as used in the instruction, does not add to its meaning. In fact, most acts of conversion (equitable conversion excepted) are unlawful, because in violation of civil rights of others, although many of them are committed under an honest belief of right, and with no criminal intent. Such are not criminal, and yet this instruction makes no distinction.''

In the case of State v. Cunningham, 154 Mo. 161, l. c. 178, 55 S. W. 282, we said:

''The word 'unlawfully,' where used in the instruction, does not supply the word 'felonious' or the words 'fraudulently,' etc., for while the defendant may have unlawfully converted the money to his own use, it does not necessarily follow that he did so with a felonious

or fraudulent intent, and, unless he did so with such intent, he is not guilty of embezzlement, although the statute does not in express terms require that there shall be a criminal intent. [State v. Reilly, 4 Mo. App. 392.] Many things are unlawfully done which are not crimes, because the criminal intent is wanting.''

The State argues that the instruction in the case at bar did not direct a verdict as it did in the Pate and Cunningham cases, and as the instructions in the case at bar that did direct a verdict used the words ''feloniously or fraudulently,'' it was not error to fail to use these words in this instruction because the instructions taken as a whole properly directed the jury. To this we do not agree. While it is true this instruction did not direct a verdict, yet it told the jury that if the appellant ''unlawfully'' converted the money the jury would be authorized to infer ''that he did intend to embezzle and convert the same to his own use. . . .'' In other words, this instruction in effect told the jury that if they found he ''unlawfully'' converted the money they should find that he embezzled it. Such is not the law, as the above-cited cases show, and this instruction should not have been given.

III. The other assignments of error involved the conduct of the special prosecutors in their closing argument and the alleged separation of the jury and its misconduct. These alleged errors will probably not re-occur in the next trial, and we will not discuss them.

It follows from what we have said the judgment of the trial court must be reversed and the cause remanded for a new trial.

It is so ordered. All concur.