STATE v. STEVE HAILEY, Appellant.—No. 38085.—165 S. W. (2d) 422.

Division Two, November 12, 1942.

*Gene Frost* and *Royle Ellis* for appellant.

302

*Roy McKittrick,* Attorney General, and *Aubrey R. Hammett, Jr.,* Assistant Attorney General, for respondent.

BOHLING, C.—Steve Hailey, former collector of Barry county, Missouri, appeals from a judgment imposing a sentence of two years' imprisonment for the embezzlement of public moneys. Issues involving the selection of extra veniremen, the sufficiency of the evidence, and the giving and refusing of instructions are presented.

Appellant had been previously tried. During the progress of the voir dire examination of the jury, the court ordered the sheriff to pick up six men to complete the panel. Appellant asserts that these prospective jurors came from the same community of the county; that three were members of an Anti Thief Association and a fourth had been a member; and presents the point that the selection of the extra jurors should not be in such manner as to prejudice the rights of an accused. He cites Sec. 707, R. S. 1939, and State v. Pine,

332 Mo. 314, 319[1], 57 S. W. (2d) 1087, 1089[1-3]. Section 707 directs, in part, "that if it shall be necessary to fill vacancies in the jury panel for the trial of any one case the court may in its discretion order the sheriff to summons from the bystanders a sufficient number of qualified persons to fill such vacancies in such case." Our holdings that statutory provisions relating to the impaneling of jurors are directory and a failure to strictly comply therewith is not ground for reversal in the absence of a showing warranting an inference of prejudice to an accused conform to the quoted provision. State v. Perno (Mo.), 23 S. W. (2d) 87, 88[2]. The holding in State v. Pine is to that effect. The sheriff summoned these men from the northern part of the county, some thirteen to twenty miles from the county seat. He testified that he knew the case had been previously tried; that he sought respectable citizens; that he gave no thought to membership in an Anti Thief Association; that he had no intimation any of the men, with possibly one exception, belonged to such an association; that the possibility of membership therein did not occur to him until appellant's counsel developed the fact on the voir dire examination. · The record does not establish partiality on the part of the sheriff. The object of the Anti Thief Association was shown to be the protection of the property of the members. These jurors were from three different townships. There was no showing of prejudice against appellant or the offense for which he was charged on the part of any of them. The contention of appellant is disallowed. State v. Hancock, 320 Mo. 254, 259(III), 7 S. W. (2d) 275, 277[6]; State v. Wheeler, 318 Mo. 1173, 1177(II), 2 S. W. (2d) 777, 778[2]; State v. Hamilton, 340 Mo. 768, 777[12-14], 102 S. W. (2d) 642, 647[17-19]; Sec. 711, R. S. 1939.

We think a case was made. The information charged appellant with embezzling $22,815.06 of the public moneys. Appellant's term expired the first of March, 1935, and the transactions involved occurred during his last year as county collector. O. P. Brite, whose testimony was offered by the State, was appellant's chief deputy and had served fourteen years in the office. It was the practice in the office to make carbon duplicates of the original tax receipts at the time of the payment of the taxes. These receipts were numbered and dated. The original was given the taxpayer. The carbon copy was retained and bound in book form. The number of the receipt and date of payment would also appear on the proper tax book of the county. Appellant's abstract (or cash) book would be made up from the duplicate receipts. Appellant's monthly statements, filed with the county collector (consult Sec. 9927, R. S. 1929, Sec. 11098, R. S. 1939), showing the amounts due the different funds, were taken from this abstract book; and his annual final settlements with the county court (consult Secs. 9918, 9919, 9922, 9935 (repealed and reenacted Laws 1933, p. 454) R. S. 1929) were taken from the monthly statements for the fiscal

year involved. There was testimony showing that a tabulation of appellant's monthly statements for the year ending March, 1935, showed a total of $226,178.88. His corresponding annual settlement accounted for $222,027.20 and, as we read part of the record, asked credit for $3,724.09 as his commission of 1-3/4%, a total of $225,-751.29. Appellant's argument mentions testimony tending to establish that the discrepancy between the total of his monthly statements and his final settlement ($427.59) was to be attributed to the "clerk's cost" (established to be $427.02), not shown on the final settlement, leaving a balance unaccounted for of 57 cents. The State, however, relied upon appellant's duplicate tax receipts for the year prior to March, 1935, to make a case. The amount shown by said duplicates totaled $240,980.27. The difference between this sum and the total of appellant's monthly statements or his annual final settlement exceeded $14,800. Appellant's position here is that his annual settlement failed to show his commission of 4% (in addition to his commission of 1-3/4%) on back taxes; failed to show the "clerk's costs"; failed to show "postage"; failed to show "penalties" on back taxes; failed to show "commission on merchants' taxes"; that these items were reflected in the duplicate receipts, and the State failed to establish that they did not consume the discrepancy between appellant's ▮▮▮▮ receipts and his reports. Appellant's monthly statements and annual settlement, although identified and referred to by witnesses, are not set forth in the bill of exceptions. The statutory enactments mentioned supra disclose a legislative intent that the annual settlement of the county collectors should account for all public moneys received. The penalty or interest on back taxes is not excluded. Consult, among others, Secs. 9914 (repealed and reenacted Laws 1933, p. 449), and 9922, R. S. 1929. Section 9927, R. S. 1929, contemplates that the collector account for and pay monthly into the State and county treasuries "all state, county, school, road, and municipal taxes," and "all licenses" collected during the preceding month. Laws 1933, p. 454, reenacting Sec. 9935, R. S. 1929, reads, in part: "The collector . . . shall receive as full compensation for his services in collecting the revenue, except back taxes, the following commissions and no more." Appellant's commission classified under subdivision "XI" thereof; i. e., 1-3/4%. As stated, the "clerk's cost" was $427.02. The evidence does not establish that postage was included in the $240,980.27 (the inference exists that it was not included). There was testimony that the annual settlement reflected "interest" or penalties, and all allowable commissions except commission on back taxes. If then, according to appellant's position, the approximately $14,000 reflected his 4% commission on back taxes, appellant collected approximately $350,000 in back taxes—a sum exceeding the figures shown by his settlements—and he is not aided. Appellant's argument also mentions abatements of taxes and his tes-

timony that receipts were issued without taxes being paid. All abatements shown by the duplicate tax receipts were excluded in arriving at the total of $240,980.27. Section 9911, R. S. 1929, specifies what is to be received in payment of taxes. Appellant's testimony did not undertake to specifically account for the discrepancy involved. He specified but one receipt of $400 as having been issued without payment being received. The duplicate receipts carried his signature, his official stamp, and showed paid.

In addition to the foregoing the State offered in evidence a number of loose receipts. Correspondingly numbered receipts in some, but not every, instance, were in the bound receipts; but in each instance the name of the taxpayer, the description of the property, and the amount of the tax did not correspond. We mention but one. Receipt No. 3418 for $1007.50. Duplicate receipt No. 3418 among the bound receipts was for $29.25, on different property and to a different taxpayer. A search of the duplicate receipts for the date of the $1007.50 receipt failed to disclose any duplicate to said taxpayer or for said amount. Deputy collector Brite could find no indication that the number on the $1007.50 receipt was wrong, and stated as his opinion, the receipt not being among the bound receipts, that the amount had not been reported; i. e., appellant was "long" and the State and county were "short." Other testimony established that appellant deposited the public moneys in different banks; that although requested not to commingle his personal account and the public moneys and to keep an account of the public moneys, appellant would take money from the cash drawer and write checks against the deposits of public moneys and keep no record thereof; that difficulty was experienced in trying to arrive at proper balances; that on one or more occasions appellant made use of public funds to take up personal over-drafts at the banks; that at times appellant was not able to turn over the public moneys called for by his monthly statements and would draw on funds collected thereafter for that purpose. We think the State made a submissible case but that it might have been more clearly developed with little effort.

Appellant attacks the State's instruction No. 4 on the ground the jury was authorized to infer that appellant criminally intended to embezzle and convert to his own use if they found appellant "unlawfully converted" public moneys received by him as county collector, asserting such inference is proper only after a finding that an accused feloniously or fraudulently converted the money. The instruction read:

"The Court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts, and if you find from the evidence that the defendant unlawfully converted the money received by him, as such public officer, or any amount thereof in excess of thirty dollars, as charged in the information, to

have been embezzled, to his own use, you will be authorized to infer therefrom the criminal intent, and that he did ▓▓▓ intend at the time to embezzle and convert the same to his own use, and to deprive the county and state of the use thereof.''

Like instructions have been before this court. In cases involving other statutory definitions of embezzlement, it (State v. Gillum, 336 Mo. 69, 73[2], 77 S. W. (2d) 110, 111[3], cited by appellant, for failure to require a finding that ''the appellant 'feloniously' or 'fraudulently' converted the money''); and main instructions directing a verdict of guilty upon a finding that the defendant did ''unlawfully convert'' to his own use the property involved (State v. Pate, 268 Mo. 431, 437, 188 S. W. 139, 141[1]; State v. Cunningham, 154 Mo. 161, 178, 55 S. W. 282, 287), have been condemned. State v. Burgess, 268 Mo. 407, 414-417, 188 S. W. 135, 137[5, 6], approves the Pate and Cunningham cases. But see State v. Adams, 108 Mo. 208, 214(IV), 18 S. W. 1000, 1001(4); State v. Lentz, 184 Mo. 223, 236 et seq., 83 S. W. 970, 972 et seq., and, by way of analogy, State v. Baker, 264 Mo. 339, 354(IV), 175 S. W. 64, 68. A number of statutes deal with the offense commonly designated ''embezzlement,'' among which are: Section 4079, R. S. 1929 (now Sec. 4471, R. S. 1939), provides: ''If any agent, clerk . . . or collector . . . shall embezzle or convert to his own use, or shall take, make away with or secrete, with intent to embezzle or convert to his own use, without the assent of his master or employer, any money . . .'' et cetera. Section 4081, Ibid., provides: ''If any carrier, bailee . . . shall embezzle or convert to his own use, or make way with or secrete, with intent to embezzle or to convert to his own use, any money . . .'' et cetera. Section 4082, Ibid., provides: ''If any tenant or lodger shall take away, with intent to embezzle, steal or purloin, any bedding . . .'' et cetera. These and possibly other statutory enactments make the actual embezzlement or conversion of property by a fiduciary an offense or the taking, making away with or secreting of property, ''with intent to embezzle or convert'' to the fiduciary's own use an offense; embezzlement being broadly defined as ''the fraudulent appropriation of another's property by a person to whom it has been entrusted or into whose hands it has lawfully come.'' 29 C. J. S., p. 670; 18 Am. Jur., p. 571, n. 16; State v. McWilliams, 267 Mo. 437, 449, 184 S. W. 96, 99; State v. Burgess, supra. However, the instant prosecution was under Sec. 4086, R. S. 1929 (now Sec. 4478, R. S. 1939), a materially different statute. It provides: ''If any officer, appointed or elected by virtue of the Constitution of this state, or any law thereof, . . . shall convert to his own use, in any manner whatever, . . . or shall make way with or secrete any portion of the public moneys, or any moneys that may have come to him . . . by virtue of his . . . office or official position, . . . every such officer . . . shall, upon con-

viction, be punished in the manner prescribed for stealing property of the kind or the value of the article so embezzled, converted, taken or secreted.'' This enactment is broader than the enactments under review in the cases relied upon by appellant. State v. Pate, supra (followed in State v. Gillum, supra), states: ''The term 'convert' does not imply any criminal intent. It is defined in Black's Law Dictionary, p. 267, as follows: 'An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights.' . . : The term 'embezzle' is not synonymous with the term 'convert,' but is synonymous with the terms 'fraudulently convert.' '' See also 18 C. J. S., p. 85, ''Convert.'' A different legislative intent, is at once manifested in the wording of Sec. 4086, supra, through the omission of that portion defining the prohibited offense of any reference to an embezzlement of public moneys as well as the specific intent found in other enactments defining embezzlement. An unauthorized appropriation of public moneys, in any manner whatever amounting to a conversion in law, by an official receiving such moneys by virtue of his office constitutes the prohibited act defined by Sec. 4086, irrespective of any fraud or fraudulent or felonious intent accompanying such conversion. The act of converting—not the act plus a specific intent or an embezzlement—public moneys by an officer is prohibited. A higher degree of fidelity on the part of officers with respect to public moneys is exacted than obtains where private funds and private individuals are involved. Public funds, unlike private funds, are not proper subject-matter for unauthorized assumptions of ownership, and legal safeguards, known to all, exist for their protection, circumscribing their authorized use. Appellant's rights in the ▮ public moneys were defined by statute. Appellant directs us to and we find no constitutional inhibition precluding the General Assembly making an act itself an offense. The function of the courts is to enforce laws in conformity with the legislative intent. Accordingly, we find the instant instruction sustained in cases involving officers. State v. Baker (Mo.), 285 S. W. 416, 418[8]; State v. Noland, 111 Mo. 473, 497, 19 S. W. 715, 720; 29 C. J. S., p. 687, n. 66, p. 723, n. 13; 18 Am. Jur., p. 597, n. 14. In State v. Noland, it is said: ''It is not too rigid a rule to require of a public official that he shall not convert to his private use the taxes exacted for the maintenance of the government. The danger lies in the other direction, that of failure to enforce the law of the land impartially.'' And this is added: ''But in this case there can be no possible complaint on this point, for the court in the first, second and third instructions given at the instance of defendant expressly required the jury to find that the defendant not only unlawfully, willfully and feloniously converted the money, but required that he must have done it *with the intent at the time*

308

to convert it to his own use,' etc., and, moreover, the jury were instructed that, 'feloniously meant a wrongful act willfully done.' Thus supplemented, the instructions met every objection the defendant urges in this connection.'' So too, in the instant case: The State's main instruction predicated a conviction upon a finding, among others, that appellant ''unlawfully, willfully, feloniously, fraudulently and intentionally embezzled and converted said moneys . . . to his own use,'' and defined ''feloniously'' as meaning ''wickedly and against the admonition of the law.'' Another instruction defined embezzlement as a ''fraudulent and felonious'' appropriation or conversion. And appellant's instruction D concluded as follows: ''Thus, in order to prove the crime of embezzlement, if any, in this case, it devolves upon the state to show, beyond a reasonable doubt, not only that . . . but also that the defendant acted with felonious, criminal or wicked knowledge or intent at such time, and unless you so find you will acquit the defendant.'' There is language in State v. Pate, supra, to the effect that the word ''unlawfully'' in the combination ''unlawfully convert'' does not add to the meaning of the word ''convert,'' notwithstanding ''conversion'' is there defined as an ''unauthorized assumption and exercise of the right of ownership'' et cetera; and that ''conversions'' can exist under circumstances not constituting a crime. The latter statement refers to conversions that are merely unauthorized. In 66 C. J., p. 35, we read: ''In criminal jurisprudence, an 'unlawful act', is a violation of some prohibitory law—nothing less.'' (In accord: State v. Carter (Mo.), 64 S. W. (2d) 687, 688[2].) Also: '' 'Unlawful' is not confined to criminal acts, an 'unlawful act' includes all willful, actionable violations of civil rights . . . '' ''Unlawfully converted'' may not be synonymous with ''fraudulently converted'' or ''feloniously converted''; but it served in the instant instruction to make plain that the conversion constituted a willful violation, for his own use, of the trust placed in appellant with respect to the public moneys. We do not rest our ruling upon the last quoted excerpt from the Noland case. We prefer to and put our approval of the instruction in the instant case on the ground Sec. 4086 forbids the act—public officers converting public moneys to their own use—and not the act plus a specific intent. Appellant was not prejudiced.

Appellant assigns error in the court's refusal of requested instruction ''I,'' which was to the effect that appellant had the right to accept county warrants in the year of their issuance when tendered in payment of taxes and to receive credit for their face amount; and that appellant could not be convicted because of a failure to accept or account for cash in lieu of such warrants. Section 9911, R. S. 1929 (now Sec. 11082, R. S. 1939), provides: ''Except as hereinafter provided, all state, county . . . and drainage district taxes shall be paid in gold or silver coin or legal tender notes

of the United States, or in national bank notes. . . . Any warrant, issued by any county . . . , when presented by the legal holder thereof, shall be received in payment of any tax, license, assessment, fine, penalty or forfeiture existing against said holder and accruing to the county . . . issuing the warrant; but no such warrant shall be received in payment of any tax unless it was issued during the year for which the tax was levied, or there is an excess of revenue for the year in which the warrant was issued over and above the expenses of the county . . . for that year." We have carefully examined this record and there is no substantial showing that appellant took in and turned over to his successor in office any county warrant falling within the provisions of said section. There is no showing of record with respect to any specific county warrant received by appellant in payment of taxes. In fact, as we read this record, there is no substantial showing that the appellant received such warrants and turned the same over or sought to turn the same over to the proper authority or his successor in office or sought and was refused credit for any such warrant. In the circumstances, there being no substantial evidence on which to base the instruction, there was no error in its refusal.

Appellant's assignment of error in the refusal of requested instruction "L," on the ground appellant was entitled to retain his commissions without paying the same into the public treasury is without merit because the court gave appellant's requested instruction "F," which was identical with refused instruction "L."

We find no reversible error in the record proper.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.