**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Bernard Leon BOOTH, Defendant-Appellant.**

**No. 35353.**

Missouri Court of Appeals,
St. Louis District,
Division 2.

Oct. 29, 1974.

Raymond A. Bruntrager, Sr., St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Ellen S. Roper, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal by defendant, Bernard Leon Booth, from a judgment of conviction entered by the Circuit Court of St. Louis City, Missouri, on a jury's verdict finding him guilty of murder in the second degree and assessing his punishment at twenty (20) years in the custody of the Department

of Corrections, § 559.020 RSMo 1969.[1] Because of the failure of the court to give an instruction on self-defense, we reverse and remand.

On May 16, 1972, in the mid-afternoon, a number of people were gathered at the Forest Park pavilion in the City of St. Louis. Five of these persons testified as witnesses. Henry and Frank Urban and Frank Smith, who were sitting together, heard what sounded somewhat like fire crackers to them. The two Urbans turned and looked into the parking area behind where they were seated and testified that they saw a man lying on the ground and another man walking away from the body. The man, who was walking away, according to them, left, got into an orange Karmen Ghia sports car, started the car, returned to the prostrated body, stopped the car, got out, walked over to the man lying on the ground and said, in effect, that the deceased was not going to do anything more to him. He then spat on the body, returned to this car, and left. Both of the Urbans wrote down the license number of the car and gave it to the police.

Two witnesses, Frank Smith and Gregory Moore, testified that they saw defendant chasing the decedent, Maurice Boykins across the parking lot; that Boykins fell and defendant walked up to where he was lying and fired two shots into his body, and then got into a car and drove up to the body, got out, spit on the body, said something, got into his car and left. At the time of the shooting some witnesses said they saw a third man, whose identity was not·disclosed, run from the scene. None of the five witnesses saw or heard anything or knew anything of what had happened prior to the first shots being fired.

Defendant testified that on the day of the shooting he had an appointment at Forest Park Community College at 3:30 P.M., but his appointment was delayed until 4:00 P.M. So, he went to the cafeteria and there he saw Boykins, whom he knew, and one of the witnesses, O'Neal Williams. Shortly after talking to Boykins, he left and returned to the pavilion to await the time for his appointment. As he was talking to a friend, Boykins, who was standing below the pavilion, called defendant over to the side porch of the pavilion. Boykins demanded money. When defendant refused the demand, Boykins said he would take it from him. A scuffle ensued. After having struck defendant several times in the face, Boykins pulled a gun. During the course of the struggle the gun fired and grazed Boykins' head. Defendant wrested the gun from Boykins' control. As Boykins turned and ran, according to defendant, he said, "'You s____ of a b____, I'll kill you.'" Defendant testified that Boykins ran toward O'Neal Williams, who had earlier been sitting on the back of a parked car nearby and that O'Neal Williams fired a shot at him with a gun he was holding. Defendant said as he ran, he kept Boykins between himself and Williams to avoid being shot by Williams. Defendant further testified that after another shot was fired at him from the vicinity of the car, he fired at Boykins to keep him from getting the gun either from Williams or from the other occupants in the car, which Boykins appeared to be trying to do. Defendant admits that after he got into his car he did go back to the body and that he did spit. But his explanation was that he returned to the body to see if he could help Boykins and that he was merely spitting blood out of his bruised mouth which had been injured in the fight with Boykins.

 We have held repeatedly that all that is required is any evidence of self-defense to justify an instruction on that issue, State v. Turnbo, 267 S.W. 847, 849 (Mo.1924). This much is conceded by the state, citing State v. Singleton, 77 S.W.2d 80, 83 (Mo.1934) and Rule 26.02, V.A.M.R. The Singleton court said that in order to justify a killing in self-defense where a

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

deadly weapon inflicts a wound in a vital portion of the body, the accused must have believed the act was necessary and have had reasonable grounds for such belief. Additionally, the court in State v. Baker, 277 S.W.2d 627, 629 (Mo.1955) said that there must be substantial evidence to require the giving of a self-defense instruction.

■ In support of its position the state cites State v. McGee, 361 Mo. 309, 234 S.W.2d 587, 591 (Mo. Banc 1950). The case is distinguishable factually from the instant case because in the *McGee* case at the time the defendant assaulted the victim the victim's back was turned and in no way was the victim even aware of the defendant's presence. So, understandably, there was no evidence of impending danger or even the reasonable appearance thereof. Here, the evidence before the jury which was uncontradicted was that Boykins was the aggressor; that seconds before the shooting he attempted to take defendant's money; that he struck defendant a number of times about the head, jaw and chin; and that when the scuffle was apparently going the wrong way, he produced a pistol. In the struggle, the gun discharged, grazing Boykins' head. Boykins ran, but, on leaving left the parting threat, " 'You s_____ of a b_____, I'll kill you.' " Seconds later Boykins' friend, O'Neal Williams, fired at defendant and Boykins continued to run toward Williams and the car. Defendant saw a gun in Williams' hand and could reasonably believe that someone else in the car had a gun because a second shot was fired from the vicinity of the car. In this charged atmosphere, defendant testified that he fired the shots at Boykins because he believed the deceased was trying to get a gun to use on him. We hold that under the peculiar circumstances of this case the attack by the victim, his production of a pistol, and the attempt to point it at the defendant coupled with his threat and his continued course of running toward a man whom he knew to have a gun, to say the least, created a jury issue as to defendant's reasonable apprehension of fear for his own life and safety. Consequently, we hold that it was reversible error for the court not to submit this issue to the jury.

■ Defendant's second claim that the court committed error in its submission of murder in second degree is without merit and untenable. Murder in the second degree is the killing of a human being wilfully, premeditatedly and with malice aforethought, but without deliberation (in cold blood). State v. Sherrill, 496 S.W.2d 321, 324 (Mo.App.1973) and § 559.020. "Malice" is the wrongful doing of a wrongful act without just cause. State v. Mosley, 415 S.W.2d 796, 798 (Mo.1967). And the intentional killing with a deadly weapon gives rise to the presumption of malice, State v. Sherrill, supra.

■ From the evidence in the case at bar, the jury could reasonably find that defendant, with gun in hand, chased an unarmed Boykins, who, although the aggressor, had abandoned the fight; that defendant shot Boykins at close range twice in the head as he lay prostrated upon the pavement; that defendant left the scene, later returned, and contemptuously spat upon the dead body. Clearly, the state's evidence warranted a submission of this theory of murder in the second degree, State v. Gregg, 399 S.W.2d 7, 10 (Mo.1966).

■ Next, we take up defendant's complaint that the court improperly permitted the state's cross-examination of him to go beyond his testimony on direct examination. State v. McClinton, 418 S.W.2d 55, 59 (Mo.1967) and § 546.260. We consider this issue only because it may reoccur on retrial.

During the course of cross-examination of defendant, the state inquired of him as to what he had done with the gun used in the shooting after he had left the scene. Over defendant's specific objection that such an inquiry was improper because the subject matter of the inquiry was outside the scope of his direct examination, the defendant was compelled to answer that he

stopped the car and threw the gun away. Repeatedly, we have held that the state is not limited to a categorical review of an accused's direct testimony, and if an accused refers to a particular subject matter in his direct examination, it is permissible that the state cross-examine him in great detail as to that particular subject matter, State v. Dalton, 433 S.W.2d 562, 563 (Mo. 1968); State v. Moser, 423 S.W.2d 804, 806 (Mo.1968). In this case defendant testified fully as to the occurrence and ended his testimony with the statement, "Started my engine up and left." Other than the use of the gun, on direct examination, he made no mention as to the gun's disposition or where he had gone or what he had done later. Consequently, in our opinion, what defendant did after leaving the parking lot or what he did with the gun was neither directly or indirectly covered in his examination in chief, nor was it within the fair purview of the direct examination, and so was beyond the scope of proper cross examination, § 546.260 and State v. McClinton, supra.[2] Our opinion in the matter notwithstanding, we must rule the point against defendant because in neither his points relied on, on appeal, nor his motion for a new trial does defendant set out the answer he was required to give, which he now claims to be erroneous. Nor does he demonstrate in what way, if any, he was prejudiced. Consequently, no issue is therefore preserved for review, Rule 27.20 and 84.04(d), V.A.M.R.

■ Defendant urges that the court unduly limited his right to cross-examine Officer William Cox, a hostile witness, regarding Officer Cox's testimony given at the coroner's inquest. After Officer Cox had testified in the state's case in chief, defendant called him to testify in his case.

Defendant called him for the purpose of impeaching the state's witness, Gregory Moore, who had testified for the state that he had seen the shooting and had given his name to the police. Moore denied telling Officer Cox that he did not see the shooting and that the only thing he saw was a man walking away tucking a gun in his waistband. Officer Cox, when asked the question as to whether Moore had told him he did not actually see the shooting, answered he could not say yes or no. At this junction, to refresh the officer's memory, defendant produced a copy of the coroner's court transcript containing the officer's sworn testimony. From the record, i. e., the offer of proof, it is unquestionably clear that in the coroner's report Officer Cox stated that Gregory Moore told him that he had not actually seen the shooting. The court refused, erroneously so, to permit defendant to refresh the officer's memory and thus the witness was able to evade the answer to the question which would have, had he answered it, put before the jury for its consideration possibly positive impeaching testimony of a witness who had given substantial evidence. See Voyles v. Columbia Terminals Co., 223 S.W.2d 870, 871 (Mo.App.1949), wherein the court stated: "It is a settled rule that a witness who does not recall or is uncertain about matters concerning which he is called upon to testify may be permitted, and even compelled, to refresh his memory by referring to writings, records, and the like, and then to testify in regard to those matters where his memory has been so refreshed that he is able to testify from his present recollection independent of the source by which his memory was revived . . . ." Here, the defendant not only laid the proper foundation but also made the offer of proof, and made known the substance of the tes-

---

2. A situation analogous to the one here is found in State v. Phillips, 480 S.W.2d 836 (Mo.1972), where the defendant objected to a question on cross examination concerning whether he drove a truck away from the scene of a burglary. On direct examination, defendant testified to the circumstances of the burglary, but did not refer to events after the crime. The court ruled the question proper, but only for the reasons that timely objection was not raised to the question and that the question tested defendant's defense that he was intoxicated. The clear implication of the court's ruling was that the question was of itself beyond the scope of the direct examination.

timony to the court. Granted, that a court may in its discretion deny testimony, but, in this instance, we hold that the court abused its discretion and by so doing deprived the defendant of vital impeachment of a material witness on a material matter. Ordinarily, we would not have reviewed this contention because defendant's points relied on failed to comply with Rule 84.04 (d), V.A.M.R. But since the issue could reoccur on retrial we took up the matter.

■ Defendant also complains about the court's ruling which precluded him from showing that while in the cafeteria Boykins had demanded money of him, and shortly thereafter the second and fatal confrontation occurred. The state objected to this testimony because it was hearsay. The basis for the objection was that normally a victim's out of court statement is hearsay and inadmissible unless the statement is part of the res gestae; for example, a dying declaration, a threat, or declaration as to the victim's state of mind, State v. Benson, 346 Mo. 497, 142 S.W.2d 52, 54 (1940). The Benson case is inapposite; because in that case the issue was verbal and non-verbal conduct occurring between the deceased and the defendant immediately before the homicide. In Benson the condemned conversation related to a conversation between the deceased and a witness sometime before the shooting of the victim by the defendant, Benson. Here, we are dealing with a conversation between defendant and Boykins, after which the shooting occurred within a very short time. There is and should be a natural desire to permit witnesses to tell their story in a natural way by telling all that happened at the time of the incident, including those details which give life and color to the story. Truth is a seamless web, and the naturalness with which the details fit each other gives confirmation to the witness' entire account. In Robertson v. Hackensack Trust Co., 1 N.J. 304, 63 A.2d 515, 519 (N.J.1949), the court said, ". . . [T]he admissibility of the proofs as res gestae has as its justifying principle that truth, like the Master's robe, is of one piece, without seam, woven from the top throughout, that each fact has its inseparable attributes and its kindred facts materially affecting its character, and that the reproduction of a scene with its multiple incidents, each created naturally and without artificiality and not too distant in point of time, will by very quality and texture tend to disclose the truth." See also McCormick, Evidence, 2nd Ed., p. 686. Measured by these standards the offered testimony was not self-serving, but was admissible as a part of the res gestae. The time element, some few minutes before the shooting and the demand for money after defendant had cashed a bill, coupled with a later demand at the pavilion, gives this evidence the probative and relevant value requiring its admission. State v. Whipkey, 361 Mo. 1008, 238 S.W.2d 374 (1951). In the instant case the court did not find the proffered testimony irrelevant, but self-serving. In Bernhardt v. Boeuf & Berger Mut. Ins. Co., 319 S.W.2d 672 (Mo.App. 1959), Judge Anderson speaking for the court said, "A 'self-serving' declaration . . . is one made by a party in his own interest at some place and time out of court, and does not include testimony which he gives as a witness at the trial." We hold the proffered testimony relevant and provable. There was no error in excluding the proffered testimony relating to the cough syrup.

■ Finally, we take up defendant's claim of error that the court erroneously, after a timely request therefor, denied him access to the police report. Officer Kassabaum had testified, on direct examination, concerning his search of the area for a weapon. The evidence indicated that Officer Kassabaum neither testified from the report nor indicated that he had refreshed his memory from it at trial. Consequently, at the time of trial, there being no general right to criminal discovery in Missouri, State v. Cannon, 465 S.W.2d 584, 587 (Mo. Banc 1971), we hold the trial court did not abuse its discretion in refusing to allow de-

fendant to inspect the police report, State v. Aubuchon, 381 S.W.2d 807, 814 (Mo. 1964) and State v. Morris, 480 S.W.2d 825, 829 (Mo.Banc 1972).

For the reasons stated herein, the judgment is reversed and remanded.

SMITH, P. J., and CLEMENS and GUNN, JJ., concur.