**STATE of Missouri, Respondent,**

v.

**Ronald William BROWN, Appellant.**

No. 35977.

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 26, 1977.

Allen I. Harris, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, Paul Robert Otto, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., John A. Roche, Jr., Asst. Circuit Atty., St. Louis, for respondent.

STEWART, Judge.

Ronald William Brown was convicted by a jury of manslaughter and of carrying a concealed weapon. The jury was unable to assess punishment on either count. The trial court sentenced the defendant to serve five years in the Missouri Department of Corrections on the manslaughter conviction and two years on the conviction of carrying a concealed weapon. The sentences to run consecutively.

We affirm the judgment of the trial court as it relates to the conviction of the

defendant on both charges, and we remand the cause to the trial court for resentencing in the light of *State v. Baker,* 524 S.W.2d 122 (Mo. banc 1975).

The manslaughter conviction arises out of an automobile collision. Viewed in the light most favorable to the State, the jury could have found that Officer Joseph Kriska and his partner, Officer Charles Dreppard, were on duty at about 1:50 a. m. They were standing in front of their patrol car, which was facing east on Russell Avenue at its intersection with Nebraska Avenue in the City of St. Louis. Mrs. Ann Brown, defendant's wife, who was driving westwardly on Russell Avenue, stopped her car opposite the officers' parked car. She told them that her husband was in the car directly behind her; that he had a pistol and that she was being forced "to go with him" against her will.

As Mrs. Brown was speaking to the police officers, the car driven by defendant pulled around her car, accelerated, violated the boulevard stop sign at the intersection, and proceeded west on Russell Avenue toward Grand Avenue at a high rate of speed. The officers made a U-turn, activated the patrol car's flashing red lights and siren, and gave chase. The police officers radioed the police department dispatcher that a pursuit was in progress. They observed the defendant's car violate another stop sign at Compton Avenue and clocked his speed at approximately 70 miles per hour. The officers observed defendant's car enter the intersection of Russell Avenue and Grand Avenue without diminishing its speed and collide with another car driven by Vernon Calvert. There was a flashing red light, which was facing traffic traveling west on Russell Avenue at its intersection with Grand Avenue. The police officers stopped their squad car in the intersection and ob-

served defendant get out of his car and collapse on the street. The defendant was identified at trial by both police officers as the only person they saw get out of the car that they were pursuing. A search of the defendant after arrest produced a loaded .25 caliber automatic pistol, which was fully concealed in the defendant's coat pocket. Vernon Calvert, the driver of the other car, died as a direct result of the injuries that he sustained in the collision.

Other facts will be set out as necessary to the disposition of the points raised.

We first consider defendant's contention that the trial court erred when it permitted the State to change one of its peremptory challenges after the defendant had made his strikes, because to do so was in contravention of that portion of § 546.200 RSMo 1969,[1] which provides that the State shall make its peremptory challenges after which the defendant shall make his challenges.

We first face the problem of determining what occurred at the trial that gives rise to this complaint. The record recites that upon completion of the voir dire "the jury was selected but not sworn."

Thereafter, the transcript relates a conference held in chambers between the court and counsel at which defendant objected "to the jury as the list is now compiled." Defendant stated that after the State had made its strikes and after defendant had made his strikes, the State changed one of its strikes. The attorney for the State explained that before he knew who was stricken, but while the sheriff was calling the jury by number, the attorney advised the sheriff that he had made a mistake in his strikes; that he had intended to strike a Mr. Powell and to leave a Mrs. Hamilton on the panel. He explained that Mr. Powell

1. 546.200 Challenges, how made

In all criminal cases, a list of the jurors found by the court to be qualified to sit in the case shall be forthwith delivered by the clerk of the court to the attorney for the State who shall thereupon and within such time as may be directed by the court, announce or indicate the challenges for the state. The jury list, with the state's challenges indicated thereon, shall then be forthwith delivered to the defendant or his attorney, who shall thereupon announce or indicate his challenges and return the list into court within such time as may be ordered by the court, and the remaining twelve, or if there be more than twelve, the first twelve next remaining on the list unchallenged, shall be the jury to try the cause. (R.S.1939, § 4065)

was acquainted with a partner of the firm representing defendant. The sheriff seated Mrs. Hamilton.

■ No record was made of the proceedings that transpired in the court room. We will consider the issue to the extent that the statements of defendant are admitted by the State. *Politte v. Wall,* 256 S.W.2d 283 (Mo.App.1953). Defendant sought no affirmative relief. Defendant, however, need not seek affirmative relief in such a situation. *State v. Brown,* 547 S.W.2d 797, 804[9] (Mo. banc 1977).

The court explained to counsel that before swearing a jury, he always asks the attorneys if the individuals seated in the jury box are the same jurors as were intended to be selected by reason of the exercise of their strikes. If not, he permits counsel to correct any mistakes. The court then stated: "[I]f Mr. Harris [Defendant's counsel] wants additional time to select his jury in the light of the fact that Mr. Allred [Assistant Circuit Attorney] may or may not have changed his selections, then of course I would give him that opportunity. If he feels he does not need it, then whatever objection he has is overruled."

Prior to swearing the jury the court asked defendant's counsel if he had anything he wanted to say, to which he replied, "No." When asked whether the individual jurors were the jury selected by the parties, counsel answered: "Subject to the objection previously made, this is the jury."

■ It has often been said that statutes relative to the empaneling of juries are directory, and when they are not followed, will not be grounds for reversal absent a showing that the defendant had been prejudiced. *State v. Perno,* 23 S.W.2d 87, 89[2] (Mo.1929).[2] The privilege of exercising peremptory challenges is a process of rejection and not of selection. The purpose of the jury selection procedures is to obtain a fair and impartial jury. *State v. Thomas,* 530 S.W.2d 265, 267 (Mo.App.1975). Defendant

here does not contend that he was not tried by a fair and impartial jury. He does not contend that any of the individual jurors were not fair and impartial. Defendant has not demonstrated how he may have been prejudiced. At most defendant complains only of procedural error without prejudice, which is not reversible. *State v. Thomas,* 530 S.W.2d at 268.

■ Our Supreme Court has recognized that situations such as the issue before the trial court can arise and that it is within the discretion of the trial court to permit the parties to correct a mistake even after the jury has been seated, but not sworn; that to permit the party to correct a mistake is within the sound discretion of the court. *State v. Harris,* 356 S.W.2d 889, 890[2] (Mo. 1962). We do not rule that a correction may not be made after the jury has been sworn.

In the case at bar, after the State had corrected its mistake and after the jury was seated, but not sworn, the court offered to permit the defendant to make all of his strikes anew.

■ We have reviewed the case of *State v. Steeley,* 65 Mo. 218 (1877), which is relied on by defendant. In *Steeley,* the State refused to reveal its strikes before defendant made his strikes. In the case at bar, the strikes were revealed, but one was a mistake. After the mistake was corrected, the array as stricken by the State was reopened to defendant. *Steeley* is not appropriate here.

Finding no abuse of discretion on the part of the trial court and no prejudicial error, we rule this issue against the defendant.

The defendant urges that the trial court should have granted his request for mistrial when the State asked the victim's widow the following question:

"Q. But you know—do you know you heard him [the insurance representative] say one thing; that the company had

2. *Varble v. Whitecotton,* 354 Mo. 570, 190 S.W.2d 244 (banc 1945); *State v. Hailey,* 350 Mo. 300, 165 S.W.2d 422 (1942); *State v.*

*Bridges,* 123 S.W.2d 67 (Mo.1938); *State v. Hart,* 331 Mo. 650, 56 S.W.2d 592 (1932); *State v. Knight,* 312 Mo. 411, 278 S.W. 1036 (1925).

taken the position—had said this man was completely responsible."

The defendant objected on the grounds that the question was "irrelevant" and asked that the court grant a mistrial. The court promptly sustained the objection and instructed the jury to disregard the question. It overruled defendant's motion for mistrial.

■ It has often been repeated that: "The granting of a mistrial is a drastic remedy, to be exercised only in those circumstances in which no action short of a mistrial would remove the prejudice claimed." *State v. Johnson,* 504 S.W.2d 23, 29[7] (Mo.1973). The question of whether a mistrial should be granted is a matter within the sound discretion of the trial judge; he is in the best position to determine the prejudicial effect of events occurring at trial. We may reverse only where there has been an abuse of discretion.

■ While we can say that the question here is a display of ineptitude on the part of the Assistant Circuit Attorney, we find no abuse of discretion on the part of the trial court.

The court acted promptly to prevent the witness from answering the question and took every measure to remedy the situation short of declaring a mistrial. There was no reversible error.

■ The defendant next complains of that portion of Instruction No. 1, which contains the range of punishment[3] with respect to the charge of manslaughter. The instruction informs the jury that the

minimum fine, which they could assess, was $1,000.00. Section 559.140, RSMo 1969, provides for a minimum fine of $500.00. The instruction in this regard is erroneous. Our primary concern is whether this error was prejudicial.

In our discussion of the case, we must keep in mind the fact that this case was tried in two counts. The misdirection is applicable only to the charge of manslaughter and not to the charge of carrying a concealed weapon. The jury returned verdicts of guilty on each count, but was unable to agree upon the punishment on either of the charges. The court, as it may under those circumstances, assessed the punishment on each count pursuant to Section 546.440, RSMo 1969.

■ The cases cited by defendant can readily be distinguished from the case at hand. In each of those cases, the jury assessed the punishment, and the prejudicial effect of the misdirection is apparent.[4] Both of the parties cite *State v. Bevins,* 328 Mo. 1046, 43 S.W.2d 432 (banc 1931). In *Bevins,* as material to our discussion, the statute provided for imprisonment in the penitentiary for a term not to exceed 2 years. The instruction was in the language of the statutes, but the jury was not informed that a person could not be sentenced to the penitentiary for a term less than two years. The jury assessed punishment at one year in the penitentiary. The court, after accepting the verdict, attempted to correct the verdict by undertaking to assess the punishment at two years in the penitentiary. The holding in *Bevins* was that under

---

3. " '1. By imprisonment by the Department of Corrections for a definite term fixed by you, but not less than two nor more than ten years, or

'2. By confinement in the City Jail for a term fixed by you, but not less than six months, or

'3. By a fine fixed by you, but not less than $1,000 or

'4. By a fine fixed by you, but not less than $100, and by confinement in the City Jail for a definite term fixed by you, but not less than six months nor more than one year.' "

4. In *State v. Harper,* 353 Mo. 821, 184 S.W.2d 601 (1945); *State v. Liston,* 318 Mo. 1222, 2

S.W.2d 780 (1928); *State v. Hurt,* 285 S.W. 976 (Mo.1926), the jury assessed the minimum under the instruction which was in excess of the minimum provided by statute. The issue was not raised in *State v. Gifford,* 186 S.W. 1058 (Mo.1916). In *State v. Sands,* 77 Mo. 118 (1882), the instruction given ignored the minimum possible term of imprisonment and stated the maximum fine to be $1,000 instead of $500. The court, in *State v. Fair,* 177 S.W. 355 (Mo. 1915), instructed that punishment was to be not less than 5 years; the statutory maximum was 5 years and the defendant was sentenced to 5 years imprisonment.

the statutes[5] respecting the assessment of punishment, the court could assess the punishment when the jury failed to agree on or did not declare the punishment, or in those cases where the jury, although properly instructed, assessed a punishment not authorized by law. In essence, the court ruled that where the jury returned a punishment not authorized by law, because of misdirection in the instruction, the court could not assess the punishment. The court, in *Bevins*, made it clear that they were not "holding that the giving of an erroneous instruction or the failure properly to instruct as to the punishment that may be inflicted would of itself be reversible error where it is patent from the record that the defendant was not thereby prejudiced." *State v. Bevins*, 328 Mo. at 1035, 43 S.W.2d at 437.

In view of the fact that the jury could not agree upon the punishment on either count, it is apparent that the misdirection in the instruction was not prejudicial to defendant in this case. The principle here has recently been recognized in the dicta in *State v. Williams*, 524 S.W.2d 137, 139[4] (Mo.App.1975).

The defendant contends that the court erred in permitting the former wife of defendant to testify. The only issue, which is preserved for our review with respect to this witness, is that she was not a competent witness. We do not have before us the issue of whether the testimony of the witness constituted a privileged confidential communication by reason of the confidential relationship of marriage, nor is it necessary to consider the fact that the witness and defendant were divorced at the time she testified. The issue, as presented to us, was specifically decided in *State v. Damico*, 513 S.W.2d 351, 361[11] (Mo.1974), where the court said:

> While at common law a wife was incompetent to testify against her husband that complete legal disqualification was removed by the enactment of the statute, now § 546.260, RSMo 1969, V.A.M.S., which states in plain language: "No per-

son shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being * * * the husband or wife of the accused, * * *."

The court did not err in permitting this witness to testify.

Defendant complains of a procedural matter occurring with respect to the final argument. We have reviewed and considered this matter and find it devoid of merit; an extended discussion would have no precedential value.

Point I in defendant's brief reads:

> "The court erred in not sustaining a motion for a directed verdict for the reason there was not sufficient evidence to sustain a conviction."

This point violates Rule 84.04(d) in that it does not state wherein and why the court erred. *State v. Booth*, 515 S.W.2d 586, 590 (Mo.App.1974). We also note that defendant filed a motion for directed verdict at the close of the State's case. After this motion was overruled, the defendant presented evidence on his behalf. He did not file a motion at the close of the case; error, if any, is thereby waived. *State v. Mulkey*, 523 S.W.2d 145, 147[3] (Mo.App. 1975). We further observe that this issue was not preserved in the motion for new trial. Rule 27.20(a); *State v. Angel*, 520 S.W.2d 687, 689[7] (Mo.App.1975). We have reviewed the transcript and find no manifest injustice which would require the invocation of Rule 27.20(c).

Point V in defendant's brief reads: "The court erred in allowing the state to put into evidence the lack of insurance by the defendant." This point also fails to tell us wherein and why the court erred. *Booth*, 515 S.W.2d at 590.

In Point VI defendant complains: "The court erred in not giving defendant's offered instructions B & C." It is again apparent that this point fails to comply with Rule 84.04(d) in that it does not state

5. Presently codified at § 546.440 RSMo 1969.

wherein and why the court erred in failing to give the instructions. *Booth,* 515 S.W.2d at 590. Further, in violation of 84.04(e), defendant has failed to set forth in full, in the argument portion of his brief, instructions "B" and "C". *State v. Gibson,* 540 S.W.2d 952, 958[9] (Mo.App.1976), *cert. denied,* 430 U.S. 907, 97 S.Ct. 1177, 51 L.Ed.2d 583 (1977).

■ This case was tried before *State v. Baker,* 524 S.W.2d 122 (Mo. banc 1975). It does not appear from the record that the court would have imposed consecutive sentences except for the mandate of § 546.480. We must therefore remand this case, solely for the purpose of resentencing by the trial court. *State v. Eldridge,* 543 S.W.2d 500, 501[4] (Mo.App.1976). In all other respects the judgment is affirmed.

McMILLIAN, P. J., and REINHARD, J., concur.